HARTY ET AL. vs HARTY ET AL.

APPEAL FROM THE COURT OF THE PARISH AND CITY OF NEW ORLEANS.

The minor who attempts to recover from his tutor, the price of an immoveable, which the latter has sold, cannot, in case he fails to obtain the whole price, sue the purchaser for the object in his possession .

Where the tutrix acquires property of the minor contrary to law, she is a possessor in bad faith, and responsible for the rents and profits.

Revenue due from the time of emancipation, is due from the time the minors are emancipated by marriage: but binding one of them as an apprentice does not emancipate him.

When minors come of age they may confirm irregular alienations of their property, and demand the price, or they may disavow them, and claim the thing and its fruits, but they cannot do both.

Minors cannot claim interest on the value of property which remains unsold, or which they state was sold illegally.

An action for interest cannot be maintained apart from the principal.

Every settlement between the tutor and the minor arrived at the age of majority, is void, which is not preceded by an account, and delivery of vouchers, ten days before the receipt is signed; and these facts must appear by the receipt.

The facts are fully stated in the opinion of the court delivered by

*Porter, J.*

The plaintiffs bring this action against Harty, their mother and tutrix, for an account and settlement of their estate administered by her, and against Sinnot, her second husband, for having possession of the property left them by their deceased father.

Sinnot pleaded specially that he was not the husband of the tutrix—a general denial—and claimed, in reconvention, the sum of six thousand dollars, which he averred the widow and heirs owed to him.

The tutrix pleaded, that she had rendered an account to her minor children in 1816; and at that time a partition was made between them; and that she has no further account to render, except in relation to the proceeds of a house and lot which had been set apart to her in the partition, and her title to which had been since annulled by proceedings at law.—*See* 8 *Martin, N. S.* To this answer she annexed the account filed by her in 1816.

To this account the plaintiffs presented an opposition, on the following grounds:

That a large proportion of the property inventoried at the death of their father, as community property, and so considered in the account filed, was, in fact, brought by the father into marriage, and belonged to him exclusively:

N 3

That she is responsible for the rents and profits of the house and lot in Chartres-street, which was decreed by the court to have been improperly adjudicated to her, from the year 1813 up to the time of filing the opposition; and that they are also entitled to the rents and profits of three tracts of land, sold by their mother, at Bayou Sarah, for which they intend to bring suit against the third possessors:

And that they are also entitled to the hire of three slaves, for which they do not intend to bring suit, as they are either dead or greatly diminished in value.

To this opposition a detailed account of various charges, made by the heirs against their mother, was annexed. The court of probates rendered judgment, sustaining the opposition in some parts, and overruling it in others. From this judgment Sinnot appealed.

It has been agreed by the counsel that there is no difficulty between them as to the property which is alleged to be community on one hand, and claimed to be that of one of the spouses on the other; and that our decision is required alone on the legal questions which have been discussed at the bar.

The first of these is in relation to the claim of one of the heirs, Artemise, to a proportion of the proceeds of the house and lot, originally adjudicated to the mother, but which adjudication has been since annulled at the suit of the plaintiffs.

After her marriage her husband received from her mother, who was tutrix, his wife's share of her father's estate. The amount due to her was settled on the basis of the account rendered in 1816; and in that account the mother was debited, and the heirs were credited with the price at which the house and lot in question had been adjudged to the mother Some time after the husband failed, and his wife presented herself as a creditor, and claimed from his estate the amount which he had received on her account from her mother. In this amount, we have already seen, was included her share of the price of the house and lot to which she now sets up a demand.

We think that this was clearly such a ratification, on her part, of the adjudication to her mother, as covered (so far as she was concerned) all informalities in the mode in which it had been alienated; and that she is precluded from demanding the thing, after having attempted to obtain the price. Her counsel have insisted that as she was unable to obtain from her husband's estate the whole amount received by him, the ratification must be limited to the sum recovered. But this argument appears to us to rest on an entirely erroneous view of the principles on which effect is given to the approbation evinced by minors, after they arrive at the age of majority, of the acts of their tutors in relation to sales of their property. They have the power to affirm or disavow the contract at their pleasure; and they may make their affirmance depend on the condition of being paid, or any other condition they please. But if they do an act shewing their approbation, and evincing their intention to carry that contract into effect without any reservation on their part, they cannot afterwards at their pleasure annul it, on the ground that the course they adopted was not profitable or useful to them. They are subject to the rules which govern all other principals, who assent to acts of their agents.

The house and lot which was adjudged to the mother was restored by a decision of this court to the succession. The minors claim their share in the rents of that house from the time it came into the hands of the tutrix up to the sale of it, under the recent decision of this tribunal; and this claim, we think well founded. The minors property was acquired by the tutrix under proceedings provoked by her. These proceedings were not conformable to law. She was in consequence of this informality, technically a possessor in bad faith, and must account for the fruits or rents from the time the property came into her possession under the adjudication. They are also entitled to an account of the rents during the time their mother held the house and lot as their tutrix previous to the adjudication: that is, from the month of October, 1813

*Eastern District, June 1831.*

HARTY ET AL
*vs.*
HARTY ET AL

The minor who attempts to recover from his tutor the price of an immoveable, which the latter has sold, cannot, in case he fails to obtain the whole of the price, sue the purchaser for the object in his possession.

Where the tutrix acquires property of the minor, contrary to law, she is a possessor in bad faith, and responsible for the rents and profits.

Eastern District,
    June 1831.

HARTY ET AL
    vs.
HARTY ET AL

But this inquiry appears only to be of importance in set-
tling the question, whether the rents are due from the time
of the emancipation of the minors, or from the inception of
the suit to annul the sale; for by an entry on record, we per-
ceive the parties have agreed, "that the boarding, lodging,
and education of the plaintiffs, by their mother, during their
minority, and up to the time of their emancipation, or major-
ity, was equal to the full revenue of their respective estates,
and the interest thereon." The parish court gave the rents
from the time the female heirs were emancipated by marri-
age, and in this we think decided correctly. It also decided,
that the rents should be paid to the male heir from the time
he became an apprentice; but in this part of the judgment
we cannot concur. The agreement on record controls the
right to claim until after emancipation, or majority. Bind-
ing a child to learn a trade does not emancipate him, and
the evidence shews the plaintiff did not reach the age of ma-
jority, until a considerable time after his apprenticeship com-
menced.

Revenue due
from the time of
emancipation, is
due from the time
the minors are e-
mancipated by mar
riage. But bind-
ing one of them as
an apprentice does
not    emancipate
him.

There is a claim set up for the hire of three slaves which
were adjudged to the mother; the plaintiff's at the same
time stating expressly that they will not claim the property,
because it has diminished in value.

When minors come of age they may confirm irregular
alienations of their property and demand the price, or they
may disavow them and claim the thing and its fruits. But
they cannot do both; and yet that is what they do here.
They are willing to accept the price at which the property
is sold, and demand the fruits or hire, as if it had remained un-
sold. This cannot be done. If they decline to annul the
sale it stands as a legal one. Their right is in the proceeds
of the property, and not to the property; and they may de-
mand the interest on the amount produced by the sale, toge-
ther with the principal, but nothing more.

When minors
come of age, they
may confirm irre-
gular    alienations
of their property
and demand the
price, or they may
disavow them and
claim the th ng and
its fruits, but they
cannot do both.

They next demand the interest on the price of property

adjudged to their mother, which they state has been sold to third persons, and for which they declare they intend to bring suit, as the adjudication to their tutrix was illegal and void. This claim presents as great an inconsistency as that just disposed of. In regard to the slaves, they claimed the price at which they were sold, and their hire, as if they had remained unsold. Here they demand the thing as unsold, and ask for the interest on the money as if it had been sold; and this, in our judgment, they have no right to do. It is for them to decide, whether the increased value of the property will compensate them for the money for which it was sold, and the interest thereon, in case it is of a description which did not produce fruits. If it did on the contrary produce them, they should ask an account of these fruits. Besides, an action for interest cannot be maintained apart from the principal, and that the plaintiffs state they will not receive.

Another question was submitted for our decision. It is contended that the plaintiff, Artemise, by claiming from her husband's estate the amount received by him from her mother, not only affirmed the alineation of the lot, but also waived all errors which might be in that account, and is now precluded from taking advantage of them. To this position we cannot assent. The receipt of the money from the husband, cannot have a greater effect than the receipt from the tutrix herself would have had: and, that would not have been a bar, because every settlement between the tutor and the minors arrived at the age of majority is void, which is not preceded by an account and delivery of vouchers, ten days before the receipt is signed; and these facts must appear by the receipt.—*Civil Code* 72, *art.* 76.

It is therefore ordered, adjudged, and decreed, that the judgment of the Parish Court be avoided, reversed, and annulled, and that this cause be remanded, with directions to give judgment agreeably to the principles laid down in the foregoing opinion; the costs to be paid out of the funds deposited in the said court.

*Eastern District,*
*June 1831.*

HARTY ET AL
*vs.*
HARTY ET AL

Minors cannot claim interest on the value of property which remains unsold, or which they state was sold illegally.

An action for interest cannot be maintained apart from the principal.

Every settlement between the tutor and the minor, arrived at the age of majority, is void, which is not preceded by an account and delivery of vouchers, ten days before the receipt is signed, and these facts must appear by the receipt.