## HAYDEL *v.* ROUSSEL, Executor.

An answer praying for an amendment of the judgment below, filed on the day on which the case was fixed for trial, is too late. C. P. 890.

A receipt given by an heir for a certain sum "in full payment of the principal and interest coming to him from a particular succession," will be considered, in the absence of any evidence of a contrary intention, as extending to all his claims as heir of the deceased. C. C. 868, 1940 § 4. 1942.

The nullity of a receipt in full and discharge given to a tutor, executed by a minor after her emancipation, by notarial act, resulting from its not having been preceded by the rendering of a full account and the delivery of vouchers by the tutor ten days previously, as required by art. 355 of the Civil Code, is a relative, not an absolute nullity; and the act must have its effect, even between the parties, until annulled in a direct action.

Compensation can take place only where the relation of debtor and creditor exists simultaneously.

APPEAL from the Court of Probates of St. John the Baptist, *Le Blanc,* J. The judgment of the court was pronounced by

KING, J. The plaintiff has instituted this action against the testamentary executor of her late tutor, *Christophe Hymel,* deceased, for the purpose of com-

HAYDEL
*v.*
ROUSSEL.

pelling him to render an account of the tutorship, and to pay over to her the amount of her inheritances from the successions of her grandfather, her mother, and her uncle, which she avers were either received by her tutor or lost by his neglect.

*C. Hymel,* the grandfather of the plaintiff, died in 1828, leaving four children, viz: *Christophe, Benjamin, Jean, and Mélite,* mother of the plaintiff, and a succession, consisting, among other things, of six promissory notes, falling due respectively in March, 1830, 1831, 1832, 1833, 1834 and 1835. A short time after his death, and before his succession had been partitioned, his son *Benjamin* also died, leaving as his only heirs his two brothers *Christophe* and *Jean,* and his sister *Mélite,* the mother of the plaintiff. The six notes, or their proceeds, were then divided among the three survivors, who were the only heirs of both the father and the brother.

In 1833 *Mélite* died, leaving as her only heirs two children, *Amelia,* the present plaintiff, and *Emélie,* both minors, to whom their father, *Moïse Haydel,* was appointed the natural tutor.

The two notes which matured in 1834 and 1835 fell in the partition to *Jean Hymel,* who died in 1833 or 1834, leaving as his only heirs his brother *Christophe,* who inherited one half of his succession, and either his sister *Mélite,* or her two children *Amelia* and *Emélie,* it does not clearly appear which, who inherited the other half.

*Moïse Haydel* was removed from the tutorship of his two minor children by a decree of the Probate Court, rendered on the 20th June, 1835; and on the 4th April, 1836, *Christophe* was nominated as their tutor by a family meeting, but neglected to take his oath of office, or to furnish bond until the 18th October, 1838. As tutor, he received the two notes of $2,833 33, which became due in 1834 and 1835, which were found after his death in the possession of his agent.

*Emélie,* the sister of the plaintiff, married in 1842, settled, shortly after that, with her tutor *Christophe* for her share of her mother's succession, with the exception of the price of a slave which had not been collected, and in October of the same year died, leaving as her only heirs, her father *Moïse,* who inherited one-fourth of her succession, and the plaintiff, who inherited the remaining three-fourths.

On the 27th July, 1844, *Moïse* made a donation to the plaintiff of his portion of the inheritance from his daughter.

The plaintiff, who is thus the sole representative of her mother, and of her sister *Emélie,* claims from the succession of her late tutor, *Christophe Hymel:*

1st. One-half of the succession of her late uncle *Jean,* including the two notes, each for $2,833 33, due in March, 1834 and March, 1835, which had fallen to him in the partition, with five per cent interest from their respective maturities.

2d. The entire proceeds of the sales of the effects of the succession of her mother *Mélite,* and of those in community between the latter and her husband, averring them to be either the proceeds of the separate property of the mother, or to belong to her heirs in virtue of her dotal and paraphernal rights.

3d. Her rights and those of her sister *Emélie* in the succession of their grandfather.

Credits are allowed for the sum of $1,934 37, received from her tutor with five per cent interest from the 5th June, 1840, and for the share of *Emélie* in the mother's succession, with the exception of the price of the slave *Sarah.*

The answer of the defendant was a general denial of indebtedness, and several pleas in compensation.

The Probate Judge considered that the settlement of *Emélie* with her tutor, and her receipt, included the succession of the uncle *Jean*, rejected all the plaintiff's claims as heir and representative of her sister, with the exception of her portion of the price of the slave *Sarah*, and decreed to her one-half the nett amount of her mother's succession, one-fourth of the succession of *Jean Hymel*, including the two notes of $2,833 33 each, and three-fourths of the price of the slave *Sarah*, the remaining fourth having been improperly extinguished by compensation as will hereafter appear.

The plaintiff being dissatisfied with the judgment, has appealed. The defendant, in his answer to the appeal, filed on the day that the cause was fixed for trial, asks that the judgment be amended, by allowing several sums pleaded in compensation, which were rejected in the court below. It is objected that the answer comes too late.

The 890th article of the Code of Practice is conclusive upon this point : " The appellee shall be allowed to file his answer until the day of argument, if he only prays for a confirmation of the judgment with costs ; but if he demand the reversal of any part, or damages against the appellant, he shall file his answer at least three days before that fixed for the argument, otherwise it shall not be received." 7 Mart. N. S. 271. 14 La. 132.

It will not, therefore, become necessary to consider several of the points presented in the appellee's answer.

The principal contest upon this appeal has arisen upon the construction and effect to be given to the receipt of *Emélie* to her tutor. The act is dated the 16th April, 1842, and its material clauses are in the following words :

" Appeared, *Christophe Hymel*, tutor of *Amelia Haydel* and *Emélie Haydel*, children and heirs of *Moïse Haydel* and *Mélite Hymel*, who, in good current money, etc., pays unto *F. D. Haydel*, and his wife, the said *Emélie*, hereto authorized, etc. by her husband, the sum of two thousand one hundred and thirty-one dollars sixty-two and a half cents, the amount due by the said *Hymel*, tutor as aforesaid, to said *Emélie*, principal and interest ; and the said *Felix* and his wife *Emélie*, hereby acknowledge the receipt of said sum of two thousand one hundred and thirty-one dollars sixty-two cents, in full payment of the principal and interest coming to them from the succession of the said *Mélite Hymel*, deceased, wife of *Moïse Haydel* ; except, however, so far as relates to the said *Emélie's* share in the price of the slave *Sarah*, sold, etc., and the price thereof not yet paid. They, the said *Felix* and wife, request of me, the judge, to erase the mortgages imposed by law on said *Hymel*, as tutor as aforesaid, for the amount herein above specified as paid."

The plaintiff contends that this receipt is to be construed to relate alone to the effects included in the inventory of the mother's succession, that such was the understanding of the parties, and that there was no intention to relinquish the rights accruing from the successions of the grandfather and uncle.

The defendant, on the other hand, affirms that it is a final settlement, and complete discharge of the tutor from all his liabilities as such, and extends to the successions of the uncle, *Jean*, and the grandfather.

There is no evidence in the record showing that the intention of the parties differed from the plain and obvious meaning of the language used in the receipt. In the absence of such proof, it must be governed by the ordinary and well-known rules of interpretation : "The intent is to be determined by the words of the contract, when these are clear and explicit, and lead to no absurd consequence." Civil Code 1940, § 4.

HAYDEL
*v.*
ROUSSEL.

Terms of art, or technical phrases, are to be interpreted according to their received meaning with those who profess the art or profession. Civil Code, art. 1942.

The words of the receipt are clear and unambiguous. Payment is acknowledged in full of the principal and interest coming from the *succession of the mother*. Succession signifies the estate, rights and charges, which a person leaves after his death. Civil Code, art. 868. Among the rights belonging to the succession of *Mélite*, were, as we have seen, those derived from the succession of her father by inheritance, and these were consequently comprehended in the receipt. No reference is made in the act to the succession of the uncle *Jean*, nor does it appear whether or not his sister *Mélite* survived him. The doubt and uncertainty in which this material fact has been left, both by the pleadings and the evidence, presents an insuperable obstacle to the determination upon this appeal of all the matters in controversy between the parties. The only testimony touching it is the admission that the deaths occurred as stated in the petition, and the petition does not aver which died first.

If *Mélite* survived *Jean*, she was one of his heirs ; and, in that event, her succession, at her death, consisted in part of her inheritance from him, and was included in the receipt. But if, on the contrary, *Jean* survived his sister, one-half of his succession fell immediately to *Amelia* and *Emélie*, and is not embraced within the terms of the act.

The difficulty of determining the extent to which the instrument affects the plaintiff's claims, arises from no obscurity in its terms, but from defect of testimony. We think that justice requires that this branch of the case should be remanded.

In order to escape from the operation of this act upon her claim, the plaintiff contends, in this court, that it is wholly null and void, having been preceded by no rendition of accounts, and delivery of vouchers by the tutor, ten days previous to the receipt, as required by law. Civil Code, art. 355. 2 La. 520.

The right of a party to treat acts of this description as nullities collaterally, was presented to the late Supreme Court, in the case of *Collins* v. *Collins' Administrator*, under circumstances very similar to those of the present, when it was held " that the act must have its effect until annulled by a direct action." The nullity was considered not to be absolute, but relative only. In that case, as in the present, the plaintiff was pursuing the representative of his former tutor's succession, for the amount of his inheritances. 10 La. 269. 9 La. 305.

But the plaintiff is further concluded from now asserting the nullity of the act, by the averments in her petition, in which she treats it as valid, and admits, in express terms, that her sister had settled with her tutor for her share of her mother's succession, with the exception of the price of a slave. Having acknowledged its validity in her pleadings, she cannot treat it as void in this suit. It must have its effect between the parties, and to determine that effect, further testimony will be necessary.

The court below decreed a part of the plaintiff's claims to have been extinguished by compensation, under the following circumstances : *Christophe*, the tutor, was the holder of notes of *Moïse Haydel*, the last of which was prescribed in 1841. *Emélie*, the daughter of *Moïse*, died in October, 1842, when he, as one of her heirs, for the first time became the creditor of the tutor. Thus the relation of debtor and creditor never existed simultaneously, and no compensation could have taken place. The effect of the prescription was to extinguish

the notes, which could only have been revived by a subsequent contract, and   HAYDEL
none such has been shown. The compensation, therefore, was improperly   *v.*
allowed, by which the plaintiff's claim for $45, with interest from the 3d April,   ROUSSEL.
1836, was extinguished. The plaintiff, however, has withdrawn his plea of
prescription, as far as relates to this item, and it does not become necessary to
correct the error.

As far as the judgment of the Probate Court has ascertained the claims of the
plaintiff in the successions of her mother and uncle by direct inheritance, with
the exception of the sum of $45, it has been acquiesced in as correct, and to
that extent must be affirmed. But as far as it has determined her rights as the
only representative of *Emélie*, by heirship and donation, we are of opinion it is
unsupported by the testimony, and must be sent back for further proof.

It is, therefore, ordered and decreed, that so much of the judgment of the
Probate Court as decrees to the plaintiff, the sum of $2,548 83, with legal in-
terest thereon from the 5th June, 1840, until paid, be affirmed. It is further
ordered, that so much of said judgment as decrees that the receipt of *Emélie
Haydel* and her husband to her tutor *Christophe Hymel*, dated the 16th day of
April, 1842, was a full discharge of her claims against her tutor for her rights
accruing as heir of *Jean Hymel*, be annulled and reversed, and the cause re-
manded for the purpose of ascertaining the dates of the deaths of *Mélite Hymel*
and *Jean Hymel*, and of determining, after having ascertained those facts, the
rights of the parties according to the principles announced in this decree; the
defendant paying the costs of both courts.

*S. L. Johnson*, for the appellant. *Benjamin*, for the defendant.