No. 13,304.

FIRST NATIONAL BANK OF FORT WAYNE, INDIANA, VS. FORT WAYNE ARTIFICIAL ICE COMPANY.

## SYLLABUS.

1. A third opponent, claiming property under seizure, has no standing to question the regularity of the proceedings, unless he charges fraud or collusion to his prejudice. He is, otherwise, confined to the establishment of his title to the property claimed by him.

2. Where a defendant in attachment files a general denial and makes no attack, by pleading, upon the attachment, and no motion to dissolve, and the transcript of appeal fails to show what objections were urged with reference to the issuance of the writ, or when they were urged, or by whom, this court is not at liberty, on the appeal, to review such questions, presented orally or by brief.

3. Whilst it is true that *quoad* the vendor and vendee, immovable property may pass beyond the control of the former, by reason of an unrecorded sale, the proposition does not hold good as to third persons, who are creditors of the vendor, and the property remains subject to seizure by them until the sale is recorded.

4. In such a case, the courts will take notice of the fractions of a day, and a recorded seizure will take precedence of a subsequently recorded sale, if the difference in time can be ascertained by proof.

5. Where a third opponent claims the ownership of immovable property, which has been seized by the sheriff in a suit against his vendor, the burden of proof is upon him to show not only that the property was sold to him, but that the sale was recorded, before the seizure.

### ON REHEARING.

Plaintiff's seizure, under writ of attachment, having been made prior to the registry of the conveyance under which the intervenor claims, cannot be defeated by the latter.

APPEAL from the Civil District Court, Parish of Orleans— *St. Paul, J.*

*Parkerson & Tobin* for Plaintiff, Appellee.

*Harry H. Hall* for Defendant and Intervenor, Appellant.

The opinion of the court was delivered by MONROE, J.

The opinion of the court on rehearing by BLANCHARD, J.

MONROE, J. Upon January 26, 1899, plaintiff instituted suit against defendant, a corporation organized under the laws of Indiana, and

having its domicil in that State, to recover a balance of $15,000.00, due upon certain promissory notes, of which plaintiff is holder and owner, and which had been made by defendant, to the order of R. T. McDonald, and were by·him indorsed. An attachment issued, and, upon the same day, was levied upon certain real estate in New Orleans, the seizure of which was duly recorded in the mortgage office. Thereafter, February 2nd, a *curator ad hoc* was appointed to represent the absent defendant, and, upon February 15th, the curator filed a general denial.

Upon April 12th, following, the Hygeia Ice Company, Limited, filed an intervention and third opposition, alleging that it had purchased the property in question, by notarial act, January 21st, 1899, and was the owner of it at the date of its seizure, and praying for judgment ordering the release of said property, and decreeing said company to have been the owner when the attachment was levied. To this intervention the plaintiff filed a general denial, and there were no other pleadings. No serious resistance was offered as against the debt claimed, and no attack, by pleading of any kind, was made upon the attachment. There was judgment for plaintiff for the amount claimed, maintaining the attachment, and the defendant, as also, the opponent, have appealed.

### OPINION.

Objection is made, by way of argument, to the sufficiency of the affidavit for the attachment and of the sheriff's notice which was served on the *curator ad hoc*. But, whilst the same counsel represents both the defendant and the opponent, the only brief filed by him is signed in his capacity as attorney for the opponent; who has no standing to raise such questions. As far back as 1820, this court said: "A " third party has stepped in, averring the goods to be his property and " demanding restoration of them. The claimant has not only attempted " to prove the property to be his, but he has been acting the part of the " defendant by undertaking to show that the attachment ought not to " have issued, and that after it had issued, it was imperfectly executed. "" The only thing which we conceive a claimant may be permitted to do " is to show that the property attached is verily his. As soon as he " succeeds in that, his part is at an end. But a claimant has surely no " right to show any irregularity in the suit in which he intervenes for " the sole purpose of rescuing the property. Whether the plaintiff, the " court, and the sheriff have been acting legally or not, is none of his " business." 8 M. 55.

*Shields,* 21st Ann. 118; *Commission Co. vs. Bond & Williams,* 44th Ann. 841; *Lincoln vs. Express Co.,* 45th Ann. 729.

It is true that, in the oral argument before this court, it was stated that the defendant also desired to urge the objection. In the lower court, however, as we have stated, no serious resistance was offered against the debt claimed, and no attack, by pleadings of any kind was made upon the attachment. The general denial applies to the allegations of the petition and contain no reference to the affidavit for the attachment, or to the manner in which the writ was executed. Any objections which were made to the attachment must have been made orally, and we have no means of knowing what they were, or when they were made, or whether made by defendant or opponent. Thus, the record merely shows that the judge *a quo* declined to consider objections of some kind, for the reasons, as stated by him, that, "where a " party seeks to prevent a seizure on the ground that he is the owner " of the property seized, no other issue can be tried but that of owner- " ship. Besides, the defendant having joined issue, any informality in " the issuance of the attachment is cured."

It is for the appellant to show that there was error in the ruling, and no such showing has been made. "Every act of a court of competent jurisdiction shall be presumed to have been rightly done until the contrary appears." *Rice on Ev., Vol. 1, p. 63.*

"The appellant must present a record showing error so clearly as to " overthrow every presumption of regularity. He must exclude every " presumption, in favor of the judgment arising from omissions in the " record, by including all the trial court proceedings affecting the error " alleged. No presumption or inference in favor of the appellant will " be made."

Ency. Pl. & Pr., Vol. 2, 294.

"It is argued that the plaintiff had no right to the writ of provis- " ional seizure. * * * No application was made in the court below " to quash the proceedings under the writ; and although the objection " to the issuance of the writ was contained in the defendant's answer, " no action of the court was had upon it, and we are not at liberty to " consider the subject on appeal."

Ledoux vs. Smith, 4th Ann. 482.

"It is too late, after an appearance and answer by defendants, and a trial on the merits, to move to set aside an attachment."

*Watson vs. McAllister, 7 M. 368; Enders vs. The Henry Clay, 8 R. 30.*

*See, also, Ealer vs. McAllister, 14th Ann. 821; Airey & Co. vs. Okolona Savings Institution, 33 Ann. 1346.*

It is said that plaintiff had no right to attach, as belonginng to the defendant, property which had been sold by it, and over which it had, therefore, no control at the time of such attachment. The proposition, otherwise stated, being, that, where a vendor and vendee have reached an agreement, which, as between them, amounts to a sale of real estate, the property at once, and without regard to the registry of the contract, passes beyond the control of the vendor, and, therefore, ceases to be liable for his debts, unless the same should be contracted upon the faith of his apparent continued ownership. We take it to be well settled, under our law, that, whilst a sale of immovable property may be good, as between the parties, by virtue of their agreement, it is void as to third persons until registered; and that so long as such sale is unregistered, an innocent third person may acquire title by purchase, either from the apparent owner himself, or at a judicial sale made at the instance of the creditor of such apparent owner.

C. C. 2255, 2262, 2266, 2275.

*Meyer & Brothers vs. Simpson, Sheriff, 21st Ann. 591; Doughty vs. Sheriff et als., 25th Ann. 290; Derbes vs. Romero, 32nd Ann. 927; Boyer vs. Sheriff, 40th Ann. 657.*

Cases in which it has been held that a title in an apparent vendee will not preclude the real owner from asserting his rights against a creditor of the vendee who has not changed his position by reason of such apparent title in his debtor have no application.

It is further contended that the registry of plaintiff's attachment, and of the sale to the opponent, of the property attached, having been made upon the same day, the law will not take notice of fractions of the day, and will, therefore, give no precedence to the attachment over the sale, even though the former may have been registered in the morning and the latter in the afternoon.

In discussing the rule thus invoked, our predecessors in this court have said:

"It has been repeatedly held that the general rule, that the law admits " of no fractions of a day is a mere legal fiction that is subject to " numerous exceptions; and that whenever it becomes necessary to " determine who of several persons has a priority of right, time may " be distinguished with accuracy. In the case of *Callahan vs. Hall-* " *well, 2 Bags. S. C. p. 9,* the court said that 'time is, in its nature,

" essentially divisible from years down to hours and minutes; a minute,
" therefore, will give priority, as effectually, in point of time, as a year
" or a day.' "   The court, in its opinion, refers to the case of *Combe vs.
Pitt, 3 Burr. Rep. 1423, 1434,* in which Lord Mansfield said: "But
" though the law does not, in general, allow the fraction of a day, yet
" it admits it in cases where it is necessary to distinguish.  And I do
" not see why the very hour may not be so too, when it is necessary,
" and can be done, for it is not like a mathematical point, which can
" not be divided."  See, also, *Simon vs. Statts, 1 Wendell Rep. 593; 11
Johnson Rep. 229;* opinion of Mr. Justice Story in the *Matter of
Joseph Richardson et al., Law Reporter, Vol. 6, p. 397.*

"In no classes of cases have the subdivisions of the day been more
" frequently recognized than in the conflicting rights growing out of
" the institution of judicial proceedings, and the execution of writs,
" from which preferences result.  There are cases in which our law
" expressly forbids the different hours of the day from being recog-
" nized as affecting the right of parties, as in the instance of the in-
" scription of mortgages, but the prohibition must be confined to the
" cases enumerated, and must be considered as an admission that the
" rule would be otherwise in the absence of an express enactment."

*Tufts vs. Carradine et al. 3 Ann. 430.  See, also, Gomilla vs. Mille-
kin, 41st Ann. 123;* Bank vs. Burkhart, 100 U. S. 686; Louisville vs.
Bank, 104 U. S. 469.

In the case of *Tufts vs. Carradine,* thus cited, the court was called
upon to decide between five attaching creditors, whose attachments
were made at different hours, upon the same day.  But the conclusion
would have been the same if the first attaching creditor had been
asserting his priority as against persons claiming rights, in or upon
the property, upon other grounds than competing attachments.  Thus,
in Beck vs. Brady, 7th Ann. 3, there was a contest between an attaching
creditor, and creditors who obtained judgments and seized under exe-
cutions, and the court, referring to the conditions at the time of the
attachment and to the rights of the attaching creditor, said:  "One
" who has no better rights at the time, that is, no privilege, mortgage,
" or lien, can not, subsequently, acquire either, so as to defeat the
" process in his favor."

*In Stephenson vs. Lee, 6th Ann. 758,* the plaintiff injoined the sale
of a slave, under an execution which had been preceded by an attach-
ment, upon the ground that the slave had been adjudicated to him in

the foreclosure of a mortgage. It was found that the mortgage was not registered until after the attachment, and the court said: "The attachment, therefore, takes precedence of the unregistered mortgage." It also appearing that the slave had been bonded, when seized under the attachment, and thereafter sold under the mortgage, the court said: "Even if the registry of the sale of slave attached, after he was "bonded, might defeat the attachment, still, in this case, that sale was "not completed and registered in the conveyance office. Therefore, it "had no effect against third persons, and the property was still subject "to seizure and execution."

In *Gasquet et al vs. Johnson, 2 La. 518*, it was said, through Martin, J.: "When the opposing creditor has an imperfect title (the possession "still remaining in the vendor) the attaching creditor will hold the "property; the sale as to third persons being completed by the delivery "alone, etc. (and at page 18). "The decision of this court that, where "the debtor may sell, the creditor may attach, must be understood as "confined to cases in which the debtor had once the possession of the "goods, and still retains it as to his creditors, although he may have "lost it to his vendee, as in the case of a sale not followed by a "delivery."

In *Emerson et al. vs. Fox et al., 3 La. 182*, it was said by Judge Martin, as the organ of the court: "The contract of sale is perfect as "to the parties, by their agreement, before tradition, * * * but "this tradition is necessary to vest the property in the vendee. This "has been so very often decided in this court that a reference to par-"ticular cases is unnecessary. But the law considers the tradition or "delivery of immovables as always accompanying the public act which "transfers the property. * * * From this general provision, those "cases must be excepted in which there is an evident legal obstacle to "the delivery. The law can not consider that as done which can not "legally be done. In the present case, the house and lot being 'in the "possession of the sheriff, at the time of the sale, it is clear that the "vendor could not make a tradition or delivery of them without vio-"lating the possession of the sheriff,'" etc.

Under the law, as it now stands, regulating seizures by the sheriff, in the Parish of Orleans, that officer is not required to take the property into his physical possession, but to cause a notice of seizure, the form of which is prescribed, to be served on the person whose property is to be seized, and a like notice to be recorded in the mortgage office. He is

also required to note and to make return of the date and hour of such recordation, which is *"deemed and considered as the seizure and possession by the sheriff,"* etc.

R. S. 3625, 3626, 3627, 3628, 3629.

We have seen that the seizure in this case was recorded at forty minutes past one o'clock, upon January 26, 1899. It is not denied that the effect was the same as if the property had been taken, as it would have been in the country parishes, into the actual, physical, possession of the sheriff. It is admitted, that, as between seizing creditors, the law favors the vigilant, and that the first in point of time, whether it be days, or hours, or minutes, obtains a preference over those who are later. It is said, however, that a creditor who seizes in the morning, takes absolutely nothing, as against a prior purchaser who records his act of purchase in the afternoon, whilst the property is in the hands of the sheriff.

But, if the seizure by one creditor is good as against a subsequent seizure by another creditor, why should it not be good as against a purchaser to whom no delivery has been made, or can be made? By the express terms of the law, the seizure takes effect at the moment that it is made; whilst in regard to sales, the law reads: 

"All sales, contracts and judgments, affecting immovable property,
" which shall not be so recorded, shall be utterly null and void, except
" between the parties thereto. The recording may be made at any time,
" but shall only affect third persons from the time of the recording.
" The recording shall have effect from the time when the act is deposited
" in the proper office, and indorsed by the proper officer." C. C. 2266.

In *Summers & Brannins vs. Clark, 30th Ann. 436*, the article cited was applied in a case where leased property, situated in New Orleans, was seized under execution, and the seizing creditor claimed the rents, though the lessee, holding under an unrecorded lease, had bound himself for the same by negotiable promissory notes, which he had delivered to the lessor, and which were outstanding. It was held, that the lease not having been recorded, as required by C. C. 2264, was null and void as to third persons, as provided by Article 2266, and that the lessee was bound to the seizing creditor for the rents.

This court said: "If a vendee in such case can, by seizure, be deprived of possession and enjoyment under his purchase, why not a lessee? If, in such a case, it is no defense that the *vendee has paid the*

*price,* why should it be that the *lessee has paid the rent?* The princi-
ples involved in the two cases are the same, and by no means novel."

At page 440, upon application for rehearing, the suggestion was con-
sidered that the article referred to, had been incorporated as new law in
the Code of 1870, and it was held that this did not affect the conclusions
as announced in the original opinion, which were, accordingly affirmed.

It will be observed that, by Article 2266, the sale takes effect as
against third persons, from the "time," and not from the "day" or.
"date" of the registry, so that, if it could be supposed that the use of
the latter words would make a difference in a case such as this, the
question must be regarded as settled by the use of the word "time" in
the later enactment.

The opponent alleges that it had purchased the property in question
before the attachment, but it does not allege that there had been any
delivery. Upon the contrary, the allegation upon the subject is, that
the "*sheriff* has attached and *taken into his possession,* the following
described property," etc. The opposition is, therefore, in the nature of
a petitory action in which the plaintiff must recover upon the strength
of the title exhibited by him. In any aspect of the case, the burden of
proof rests upon the opponent to show that, not only as to its vendor,
but as to the plaintiff in attachment, the property in the possession of
the sheriff belonged to it at the moment of the seizure. Harper vs.
Bank, 15th Ann. 135; State vs. Bank, 20 Ann. 468; Williams vs.
Hefner, 30 Ann. 1193.

And, inasmuch as registry is necessary in order to establish title in
real estate, as against third persons, the burden rests upon the opponent
to show, affirmatively, that, the title under which it claims was duly
registered before the plaintiff acquired possession by seizure. It is not
pretended that this has been done.

It appears from the evidence that the act of sale, upon which the
opponent relies, was executed January 21, 1899, but that the parties
thereto failed to reach a conclusion as to which of them should pay the
internal revenue tax, amounting to $160, so that the matter remained
in abeyance until January 26, the day upon which the attachment was
levied. Whether the question of the payment of the tax was settled,
and the act was then registered before the registry of the seizure, or
afterwards, does not appear.

It is clear, however, that the time at which the revenue stamps were
affixed, and at which the act was sent to the conveyance office, and

received and indorsed by the register, are matters that are within the cognizance of the opponent, rather than of the attaching creditor, and that the burden of proof upon the subject rests upon the former. *Greenleaf on Ev., Sec. 29; Bowman vs. McElroy & Bradford, 15th Ann. 663;* Ridgely, Blair & Co. vs. Gill, 15th Ann. 509.

Beyond this, there is no other evidence than the declaration contained in the act of sale, that the purchaser has paid any part of the purchase price, or that it will lose anything by the seizure. And, in view of the admission that the question of the revenue stamps remained open until January 26th, it seems hardly probable that any payment was made before that time. Upon the other hand, if the purchase price was paid on the date last mentioned, and after the seizure, the purchaser did a very imprudent thing, and has only itself to blame; for, it is shown that the certificate of mortgages, attached to the act of sale, bore neither date nor signature when the act was registered; and it has been stated, in argument, without contradiction, that it had been issued more than a month before, and was eventually dated January 21, 1899.

What difference, if any, it would have made if the sale to the opponent, though recorded after the seizure by attachment, had been recorded within forty-eight hours after the passage of the act, as provided by C. C. 2255, is a question which does not arise.

For these reasons, we are of opinion that there is no error in the judgment appealed from, and it is, accordingly, affirmed.

## On Rehearing.

BLANCHARD, J.   A review and reconsideration of this case, on rehearing, after oral argument again heard, has not lead to a conclusion different from that announced in the former decree of this court.

The seizure under the attachment was sufficient.

The sheriff's notice recorded in the mortgage office on January 26, 1899, contained the title of the suit, the number upon the docket, the name of the court from which the writ issued, the amount claimed, and the description of the property seized.

This complied with the requirements of R. S. 3183.

"The recording of the description and notice mentioned above," declares R. S. 3186, "shall be deemed and considered as the seizure and possession by the sheriff of the property therein described"—this in the Parish of Orleans.

The same day the sheriff posted a copy of the writ at the places and in the manner required by law.

Later, on February 2, 1899, a curator *ad hoc* was appointed to defend the non-resident defendant.

It would seem, and such is the legal presumption, that the necessary service of papers was made upon him—citation, original and supplemental petitions and notice of seizure—for we find that the curator, on February 15th following his appointment, filed an answer "to plaintiff's original and supplemental petitions." This answer was merely a general denial.

The objection to the sufficiency of the seizure under the attachment is leveled at the circumstance that, whereas the notice of seizure recorded in the mortgage office *did* contain a statement of the amount claimed, that served on the curator *ad hoc* omitted mention of the amount claimed.

It contained, however, the description of the property seized, the title and number of the suit and the court in which pending, and the copies of the petitions served at the same time set forth fully the nature and amount of the claim.

This sufficed, even if the defendant can now, after formal answer to the merits and without plea, raise the point of insufficiency of the seizure.

The sale of the property under which the intervenor claims was made on January 21st, 1899, but its registry in the conveyance records was delayed until January 26th.

Now, on the latter day the plaintiff's attachment issued, and at the time the seizure of the property thereunder was effected by registry of the notice in the mortgage office, there was nothing on record, or filed in either the office of the Register of Conveyances or in the mortgage office (though a special mortgage had been retained in the act of sale to secure a large balance of unpaid purchase price) showing the sale to have been made.

At least there is nothing in the record of the case tending to establish a registry of the sale prior to the attachment.

Plaintiff's evidence shows that his seizure under the attachment was made at 1:40 p. m. of that day. If there had been prior registry of the sale it was incumbent on the intervenor to show it. The burden was on him. Williams vs. Heffner, 30 La. Ann. 1193.

It must be held, therefore, that the seizure under the attachment

primed in point of time the registry of the act of sale under which the intervenor claims.

C. C. 2254 makes it the duty of the recorder to endorse on the back of each act deposited with him *the time* it was received and to record the same without delay *in the order* in which they were received.

C. C. 2258 declares he shall register all acts of transfer of immovable property passed in the Parish of Orleans, which shall be presented to him, in the order in which said acts shall have been delivered to him, to be registered.

C. C. 2262 says "in the Parish of Orleans, acts, whether passed before a notary public or otherwise, shall have no effect against third persons but from the date of their being deposited in the office of the register of conveyances."

C. C. 2264 lays it down that "no notarial act concerning immovable property shall have any effect against third persons until the same shall have been deposited in the office of the parish recorder, or register of conveyances of the parish where such immovable property is situated."

And, finally, C. C. 2266 recites that "all sales * * * affecting immovable property, which shall not be (so) recorded, shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons *from the time of the recording. The recording shall have effect from the time when the act is deposited in the proper office, and endorsed by the proper officer.*" (Italics ours).

In view of these plain and precise declarations of the law, it is impossible to hold otherwise than that plaintiff's seizure under the writ of attachment having been made prior to the registry of the conveyance under which the intervenor claims, it cannot be defeated by the latter.

The authorities cited in the opinion of the court heretofore handed down are directly in point as sustaining this view of the law.

For the reasons therein given and those herein contained, it is ordered and decreed that the judgment appealed from be affirmed at the costs of the appellants in both courts.