(a) By striking out the allowance of $100 in favor of C. E. Wooten.

(b) By dismissing the demand of the administrator for support of the opponents, as in case of nonsuit.

(c) By striking out the charge of $87 for interest.

(d) By charging the administrator with $150 representing the price of two mules.

(e) And by reserving whatever rights the opponents may have against the administrator for the noncollection of the policy of insurance and the collateral notes mentioned in the judgment below, as well as the note of Calvert Andrus and Julien Verret for $35 and it is further ordered that said judgment as thus reversed in part, and as thus amended, be affirmed; costs of appeal to be paid by the appellee.

---

(54 South. 128.)

Nos. 18,125, 18,493.

WASHINGTON et al. v. FILER et al.

(Jan. 3, 1911. Rehearing Denied Jan. 30, 1911.)

*(Syllabus by the Court.)*

1. DEATH (§ 4*)—ACTION BY HEIR—FACT OF DEATH.

A plaintiff suing as sole heir of her mother, concerning whom all that is shown is that she left here in 1900, being then about 31 years of age, to go to Arkansas, and that "they say" she died, has no standing to prosecute the suit; the mother, under whom she claims, not being sufficiently accounted for.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 5, 6; Dec. Dig. § 4.*]

2. HUSBAND AND WIFE (§ 274*)—COMMUNITY PROPERTY — SALE FOR TAXES — RIGHTS OF HEIRS OF DECEASED WIFE.

Whilst it is true that as against the surviving husband, who has allowed community property to be sold for taxes, and before the expiration of the year allowed for redemption

has bought it from the tax purchaser, instead of redeeming it, the heirs of the deceased wife may enforce their equitable claims, and it may be held that the purchase inured to their benefit, and operated merely as a payment of the taxes, such claims cannot be enforced against third persons, thereafter acquiring the property, through mesne conveyances duly recorded, and tracing title back to the tax sale whereby the interests of the former head of the community and of the heirs of the deceased partner were devested.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1026–1031; Dec. Dig. § 274.*]

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Action by Warren Washington and others against Frank Filer and others. Judgment for plaintiffs, and defendants appeal. Reversed, and judgment rendered for defendants.

Alexander & Wilkinson, for appellant Frank Filer. Thigpen & Herold, Wise, Randolph & Rendall, F. J. Looney, and W. H. Scheen, for other appellants. D. T. Land, for appellees.

### Statement of the Case.

MONROE, J. Plaintiffs, Warren Washington and Susan Brannun, allege that they are the son and granddaughter, respectively, of Thomas Washington and Mary Jane, his wife; and, as the heirs of the wife, they sue to recover an undivided half interest. in a tract of land which they say was acquired during the existence of the marital community between her and Thomas Washington. They allege that she left two children —Warren (plaintiff) and Mattie, afterwards the wife of Nelson Brannun and mother of Susan Brannun (the other plaintiff)—who (i. e., Mattie) they allege "died at her domicile in your said parish, intestate," leaving said plaintiff as the sole issue of her marriage. They further allege that different portions of the tract in question are claimed by Frank Filer, John E. McGuire, Isaac Barron, Mrs. Minnie Meyer, Harry Levy, Henry Hun-

sicker, Allen Rendall, and Joseph H. Levy, respectively; that neither plaintiffs nor said parties are in possession, but, if any of the latter are in possession, that this suit is against them as possessors; otherwise, that it is a suit to establish title. The land in question is the S. E. ¼ of Sec. 17, Tp. 20 S., R. 15, Caddo parish, and the ownership thereof is claimed by defendants as follows: Filer claims N. W. ¼ and S. E. ¼ of said quarter section, alleging that he purchased the· N. W. ¼ from Curry, who purchased from Mason, and he calls both of them in warranty; and Curry calls in Mason, and Mason calls Hedrick and Seltzer. As to the S. E. ¼ of said tract, Filer calls Barron in warranty. Levy, Hunsicker, and Rendall set up title to the S. W. ¼ of the tract. McGuire claims to N. E. ¼, and calls Barron in warranty.

The evidence shows that Thomas Washington and Mary Jane Austin were married, under the régime of the community, on May 6, 1868; that a patent for the land in question was issued to Washington on March 6, 1874; and, as we think, that· his wife was then living, but died shortly afterwards. The deceased wife left but the two children, —Mattie, who was born in 1869, and Warren, who was born in 1872. In December, 1885, Mattie married Nelson Brannun, and prior to her separation from him had several children, all of whom died, save Susan, who, with her uncle, Warren, are the plaintiffs in this case. Mattie, having separated from her husband, went away, and is said to have returned to Louisiana in 1900, and to have· again gone away to Arkansas, where, "they say," she died that same year, there being no· positive testimony on the subject of her death. In June, 1889, the property was offered for sale for the taxes of 1888, and adjudicated to Sam Benjamin and Isaac Barron, who on April 28, 1890, conveyed it to Thomas Washington by a deed which recites that

they sell it, "with only such title as they received," for $35.90 cash. Washington, on the same day, mortgaged the property, as thus acquired, to his vendors, to secure a loan of $120, and in February, 1892, the mortgagees foreclosed and bid in the property. In May, 1894, the undivided half interest of Benjamin being offered for sale under a fi fa., issued in the suit of Hamilton-Brown Shoe Company, was adjudicated to the plaintiff in the writ, and in May, 1901, the Shoe Company sold said interest to Ira G. Hedrick, who in June, 1901, sold a half interest in the interest so acquired to H. K. Seltzer. On April 24, 1902, Mrs. Gabe Levy, widow of Jake G. Levy, Mrs. Charles Frank, Mrs. Bertha Bodenheimer, and Mrs. Helen Leadman (heirs of Mamie Benjamin) executed an act of sale whereby they conveyed to Henry Levy and Mrs. Minnie Meyer all their right, title, and interest in a number of tracts of land, and, among others, "all the right, title, and interest of Sam Benjamin in and to * * * the S. E. ¼ of section 17, township 20, range 15, in Caddo Parish." Thereafter, Henry Levy and Mrs. Minnie Meyer instituted a suit, alleging that they owned a one-fourth interest in said quarter section, and that Hedrick was unlawfully in possession of it, and praying for judgment against him, on the question of title, which judgment was rendered on July 6, 1904. On April 22, 1905, H. K. Seltzer, Mrs. Minnie Meyer, Henry Levy, and Isaac Barron, appearing as the owners of the entire quarter section, in the proportions of one-fourth to Seltzer, one-fourth to Mrs. Meyer and Henry Levy, and one-half to Barron, effected a partition thereof, whereby Seltzer acquired lot No. 2, embracing the N. W. ¼, Mrs. Meyer and Henry Levy acquired lot No. 4, embracing the S. W. ¼, and Barron acquired lot No. 1, embracing the N. E. ¼, and lot No. 3, embracing the S. E. ¼ of said quarter section. On December 17, 1906, Mrs. Meyer and

Henry Levy sold the interest so acquired by them to Henry Hunsicker, Allen Rendall, and J. H. Levy; and on March 23, 1908, Ira G. Hedrick sold to S. W. Mason an undivided half interest in the N. W. ¼ of said tract, which was followed by a sale by Seltzer to Mason on March 28, 1908, of his undivided half interest therein. On March 30, 1908, Mason sold the N. W. ¼ of the tract to Currie, who on March 31, 1908, sold it to Filer. There was judgment in the district court in favor of plaintiffs, and defendants and warrantors have appealed, and, save McGuire, who appealed subsequently, have brought up their appeals in one transcript, the two appeals having been consolidated by consent.

## Opinion.

We have found, as a fact, that the property in question was acquired during the existence of the community between Thomas Washington and his wife, and that upon the death of the wife her half interest was inherited in equal proportions by the two children of the marriage, Mattie and Warren. Warren is before the court, as plaintiff, but Mattie is not sufficiently accounted for (though we entertain no doubt that Warren's coplaintiff, Susan Brannun, is her daughter), for it is shown that she was alive in 1900 when she went to Arkansas, and all that we know of her since then is that "they say" she died, which, considering that, if alive, she is only about 40 years of age, is not enough to authorize the presumption of her death, and hence not enough to give her daughter a standing in court as her sole heir. Babin v. Phillipon, 3 La. 376; Martinez v. Vives, 32 La. Ann. 305; Rachel v. Jones, 34 La. Ann. 110; Willett v. Andrews, 51 La. Ann. 486, 25 South. 486; Iberia Cypress Co. v. Thorgeson, 116 La. 218, 40 South. 682. The claim of Susan Brannun must, therefore, in any event, be dismissed.

Thomas Washington continued to live on the land after the death of his wife, and it was assessed to him for the taxes of 1888, and sold for those taxes in June, 1889, to Sam Benjamin and Isaac Barron. There is no suggestion of illegality in the sale so made, and we take it to be conceded that Benjamin and Barron thereby acquired a valid title, and that the title of Thomas Washington and the heirs of his deceased wife was thereby legally and entirely divested, save that they had the right to redeem the property within 12 months from the registry of the tax deed, by paying "the taxes, interests and costs and 20 per cent. on the price given," together with the taxes due up to the date of such payment, and in such case the right to demand and receive a certificate showing that the property had been redeemed. Act No. 85 of 1888, §§ 62, 63, 64. On the face of the papers, this right of redemption does not appear to have been exercised. It is true that, within the year after the sale, to wit, on April 28, 1890, the tax purchasers conveyed the property to Washington, but it was by means of an act of sale—to all intents and purposes a quitclaim deed—which contains no intimation that the property had ever previously belonged to Washington, or that it had even been sold for taxes; and on the same day, before the same notary, and in the presence of the same witnesses, the purchaser (Washington), who, according to the recitals of the act of sale, had paid $35.90 cash as the purchase price, imposed a mortgage on the property thus acquired to secure the sum of $120, said to have been borrowed from his vendors, under which mortgage the property, more than a year later, was seized by the sheriff, and on January 7, 1892, adjudicated to Benjamin and Barron, plaintiffs in the seizure, the act of sale having been executed on February 13, 1892, and recorded on June 27th following; after which (in May, 1894) the interest of Benjamin was sold under fi. fa. to Hamilton-Brown Shoe Company from which it passed, by mesne conveyances, to the defendants or warrantors, and the interest of Barron, segregated by a partition, was sold by him to the defendant Filer.

If, then, it be true, and it is not disputed, that Benjamin and Barron acquired a valid title by the tax sale, it must also be true that the title which they conveyed to Washington was valid, unless there was some special reason why it was invalid. The contention on that point, as we take it, is that Washington, by reason of his relations to his children, with whom he was, or had been, the co-owner, and of whom he was, or had been, the natural tutor (though he does not appear to have qualified as such), had no capacity under such circumstances to acquire a title adverse to theirs, but that he must be considered as having acquired for them and himself; or that he must be held to have redeemed the property for them and himself. And, as between him and his children, it might be conceded that the contention is sound and well supported. But we do not see how it can be sustained against the third persons who are parties to this suit, and who acquired the property, as they had the right to acquire it, upon the faith of the titles, as spread upon the public records. Benjamin and Barron, by their tax purchase, acquired a title which was defeasible only by the redemption of the property; and the property was not redeemed. It was sold by a deed which contains no reference to any tax sale or any previous ownership. There is no allegation that this was done in fraud, and it seems not unlikely that the real reason was that neither Washington nor his children had the money needed for the redemption of the property, and that Washington borrowed it, together with an additional amount, from Benjamin and Barron; for, simultaneously with the sale to him, and before the same

notary and witnesses, he mortgaged the property as thus acquired to secure $120, borrowed from his vendors. If the facts were as we have thus supposed they may have been, and if Washington, not having the money with which to redeem, had been allowed to buy on credit, and, in the same act by which he acquired, had mortgaged the property to secure the purchase price, it could hardly be contended that the vendors would not have been entitled to enforce the mortgage, or that third persons, acquiring through mesne conveyances under a sale made for that purpose, would not have acquired a good title; and, in equity, to which alone plaintiff can appeal, if the facts be as supposed, the conclusion stated holds good, as matters stand, since if Benjamin and Barron furnished Washington the money with which to buy the property the mortgage given to secure it ought to be held good, whether imposed by the same act as that by which the sale was witnessed, or by another executed at the same time, though, theoretically after the passage of the title.

On the other hand, let us suppose that Washington had the money with which to redeem the property, and that for the purpose of defrauding his children he chose to buy it instead of redeeming it, the result was that, on the face of the record, he appeared to be the owner by purchase from one who had acquired at tax sale of property the title to which was defeasible only by redemption, and in that capacity, having mortgaged the property, and it having been sold long after the time allowed for redemption had expired in satisfaction of the mortgage, and having been acquired through mesne conveyances by third persons, the question arises, Are not such persons, under the laws regulating title to real estate, afforded protection, as against equities which may have existed between Washington and his children? We think they are.

The Constitution of 1868 rid the state of the tacit mortgage, by a provision reading, in part, as follows:

"Art. 123. The General Assembly shall provide for the protection of the rights of married women to their dotal and paraphernal property, and for the registration of the same; but no mortgage or privilege shall hereafter affect third parties, unless recorded in the parish where the property to be affected is situated. The tacit mortgages and privileges now existing in this state shall cease to have effect against third persons after the first day of January, 1870, unless duly recorded," etc.

And the Constitution of 1879 contained a similar provision, reading in part:

"Art. 176. No mortgage or privilege on immovable property shall affect third persons unless recorded or registered in the parish where the property is situated, in the manner and within the time as now, or may be, prescribed by law, except privileges for expenses of last illness and privileges for taxes, state, parish and municipal; provided, such privilege shall lapse in three years."

There had been, for years prior to the adoption of the Constitutions mentioned, laws providing that:

"Acts relating to real estate, whether they are passed before a notary public or otherwise, shall have no effect against third persons but from their registry"; "that no notarial act concerning immovable property shall have any effect against third persons until the same shall have been recorded"; and "that all sales, contracts and judgments, which shall not be so recorded shall be utterly null and void, except between the parties thereto. The recording may be made at any time, but shall only affect third persons from the time of recording."

As far back as 1847, Chief Justice Eustis, speaking for this court, had said:

"The theory that notice is equivalent to registry in relation to conveyance of property, we do not understand to have been adopted in our jurisprudence."

And it was held that a judgment creditor could seize, as the property of his debtor, real estate which the latter had sold, and the title to which had been recorded, to the knowledge of the attorney of such creditor, in the mortgage, instead of the conveyance, office. Tulane v. Levinson, 2 La. Ann. 788.

In 1869, Chief Justice Ludeling (speaking

for the court), after referring to the laws above quoted, said:

"Whether the laws be good or bad is immaterial. Courts are bound by them, and must determine the rights of litigants in accordance with their provisions. The lawgiver, it would seem, was determined to settle the vexed question, whether knowledge was equivalent to registry in Louisiana, and he declared that it was not." Harang v. Plattsmier, 21 La. Ann. 426.

The laws thus referred to were incorporated in the Revised Civil Code of 1870, with amendments which emphasize the construction thus placed on them (articles 2246, 2262, 2264, 2265, 2266), and that construction has since then been repeatedly affirmed. Levy v. Mentz, Sheriff, 23 La. Ann. 261; Doughty v. Sheriff, 25 La. Ann. 290; Villavaso v. Walker, 28 La. Ann. 777; Miltenberger & Co. v. Dubroca, 34 La. Ann. 313; Meyer v. Fountain, 34 La. Ann. 987; Bank v. Ice Co., 105 La. 133, 29 South. 379; Baker v. Atkins & Wideman, 107 La. 490, 32 South. 69; McDuffie v. Walker, 125 La. 152, 51 South. 100.

Notwithstanding the law and jurisprudence thus referred to, the purpose of which would seem to be to require that, in order to affect third persons, all rights or claims relating to real estate should appear of record, there are other provisions of law and other rulings which militate, to some extent, to defeat the literal accomplishment of that purpose. The head and master of the marital community, for instance, acquires such property in his own name, and no unrecorded mortgages upon it, to secure the rights of his wife during his life, can affect third persons. But the moment she dies, her heirs become the unregistered owners of her undivided half interest, subject to the payment of the community debts, and the surviving husband, who alone appears from the record to be the owner, cannot, save perhaps, for the payment of such debts, make a valid conveyance of that interest.

In the case at bar, however, the interest of the head and master of the community, as also that of the heirs of the deceased wife, were divested by the tax sale, and Benjamin and Barron became the absolute owners of the entire property, with the power to do therewith as they pleased, subject only to the right of the former owners to redeem within 12 months. The former owners did not redeem, but the surviving spouse, co-owner and tutor, bought the property and mortgaged it, and it was sold under the mortgage to the vendors (who were the adjudicatees at the tax sale), and from them it passed by mesne conveyances to the present defendants. We have, therefore, a situation which is several removes from that of the surviving spouse selling the property of the community, or as against his wards and co-owners affirming the validity of a tax adjudication to himself; and, in order to give judgment for the plaintiff, we should be obliged to hold that, notwithstanding the devestiture by the tax sale of the unregistered title of the heirs of Jane Washington, the recorded tax title and all the recorded titles which have followed have, by reason of the fact that the tax purchasers sold the property to Thomas Washington, become affected with the infirmity, which, upon his wife's death, affected the recorded title held by him. In other words, we should be compelled, in spite of the law and jurisprudence to which we have referred, to introduce into our system the doctrine that an innocent third person who traces title to real estate through recorded conveyances back to a valid tax sale may be ejected at the suit of an unregistered co-owner with the tax debtor, a doctrine which we have heretofore held to be untenable, the right of one co-owner against another growing out of the purchase by the latter at the tax sale of the property held in common being based upon equitable considerations, which, however cogent, as between them, cannot be allowed to affect

the rights of third persons, legally acquired, upon the faith of the public records. Harris v. Lumber Co., 119 La. 978, 44 South. 806; Duson et al. v. Roos et al., 123 La. 835, 49 South. 590, 131 Am. St. Rep. 375.

Finding that defendants have established their defense upon the merits, we find it unnecessary to pass upon the questions of prescription that are raised.. For the reasons thus assigned, it is ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of the defendants and warrantors rejecting the demands of the plaintiffs and dismissing this suit at their cost.