J.J.G. Chelette, during the existence of the community of acquets and gains with his wife, Mrs. Ruth Chelette, obtained by homestead entry from the United States Government the Southwest Quarter of Northeast Quarter (S.W. 1/4 of N.E. 1/4), Section 8, Township 7 North, Range 3 West, Grant Parish, Louisiana, containing 40 acres. His home was established on this property, and there he lived until his death on January 29, 1920.
Surviving him were his above named widow, the owner of one-half of the tract by virtue of its community character, and seven children, issues of the marriage, who inherited the remaining half.
On May 24, 1930, the property, while assessed to the J.J.G. Chelette Estate, was adjudicated at tax sale for the unpaid taxes of 1929 to Mrs. E.J. Spikes. The price *Page 554 
was $11.45, and it covered taxes, interest and costs.
The adjudicatee, Mrs. Spikes, executed a deed on August 27, 1931, reciting the tract's conveyance to Roten Chelette, one of the mentioned children, for the sum of $100 cash in hand paid.
On June 17, 1940, the widow, Mrs. Ruth Chelette, instituted this suit against her son Roten Chelette attacking the aforementioned tax sale to Mrs. Spikes and also the conveyance to him. In the petition, it is charged that the transactions were collusively effected by those persons under a fraudulent agreement to place title to the property in the name of defendant, and that the only money involved was the $11.45 furnished by the latter to Mrs. Spikes with which to make the purchase at the tax adjudication. Additionally, plaintiff points out certain alleged legal deficiencies in the consummation of the tax sale. She prays for relief appropriate to her attack, and for a monied judgment against defendant allegedly due for his occupancy of the property and for timber cut therefrom by him.
The defense is that the assailed tax sale and the conventional transfer to defendant were both valid and bona fide transfers, supported by adequate considerations and confected without any fraud, and that they are legal and binding. Further the prescriptions of five and ten years are pleaded.
Intervening in the action, and adopting the allegations and the prayer of the plaintiff's petition, were five of the other children, namely, Gyles, Boothy, Talton, Ruel and Uel Chelette. They asked that each of them be recognized as the owner of a one-fourteenth interest in the land. The petition of intervention was later withdrawn, however, the reason given in the motion for withdrawal being that some of the intervenors were minors.
The judgment of the district court, following the trial of the case, decreed defendant Roten Chelette to be the owner of the contested property; and it ordered a rejection of the demands of plaintiff. She appealed.
The settled jurisprudence of this state is to the effect that when a plaintiff, in a suit to set aside a transfer of real estate on the ground of fraud or simulation, makes allegations of fact tending to show fraud and supports them with evidence sufficient to cast serious doubt on the reality of the transaction, it is the duty of the defendant to prove the genuineness of the transfer. King v. Atkins 33 La. Ann. 1057; First National Bank of Ruston v. Jones, 186 La. 269, 172 So. 155, and Williams v. Watts, La.App., 195 So. 54.
This doctrine finds fitting application to the instant case, we think, and under it the defendant Roten Chelette carries the burden of showing the alleged bona fide character of the questioned tax sale and the subsequent transfer. In substantiation of her charge of a collusive undertaking, the widow, Ruth Chelette, testified that Roten Chelette admitted, in the presence of her and other children, his furnishing of the money to Mrs. Spikes to purchase the property at tax sale and that he paid no consideration for the conveyance to him. To the same effect was the testimony of the children, Gyles, Boothy and Ruel Chelette; and these further said that such admission was made at a meeting of the mother and children held for the purpose of settling the controversy and avoiding this law suit.
Also in support of plaintiff's allegations are the proven circumstances that Mrs. Spikes at no time took possession of the property; that plaintiff, together with defendant and his wife, resided continuously in the house originally built on the property from a date prior to the tax sale until May, 1940, when she went to live with her son Ruel; and that the last named child and also Boothy Chelette built their respective homes on the contested tract of land several years before this action commenced.
The only evidence offered by the defendant in proof of the genuineness of the transactions was his own testimony. The tax purchaser, Mrs. Spikes, was not called as a witness. Defendant denied having furnished the money for buying the property at tax sale, and testified that he paid Mrs. Spikes $100 in cash which he had earned as a laborer. At several places in his testimony there is shown a denial of the aforementioned admission attributed to him, although the holding of the meeting was admitted; however, when the trial judge addressed him with the remark, "He is asking you now whether you said it or not", he replied, "I might have then, I would not say." And, with reference to the admitted meeting, defendant commented several times: "I was talking then and I am swearing now."
The meager and obviously unsatisfactory proof offered by defendant is insufficient, *Page 555 
in our opinion, to overcome the presumption created by plaintiff's pleadings and evidence, which is that the assailed transactions were not genuine; and hence the tax sale in effect was only an adjudication of the property to the defendant Roten Chelette.
This holding makes applicable the well recognized doctrine announced in Bossier v. Herwig et al., 112 La. 539, 36 So. 557, which is accurately reflected in the syllabus of the court as follows:
"The adjudication to one of several joint owners of property offered at auction in enforcement of delinquent taxes does not divest the other joint owners of their ownership. The adjudication operates a payment of the taxes for the joint benefit of the owners with the right in the adjudicatee to be reimbursed for his outlays."
Plaintiff, consequently, has not been divested of her undivided one-half interest in the property.
The pleas of prescription of five and ten years, in view of the conclusion reached, are without merit; and a consideration of the legal objections to the tax sale that are urged by plaintiff is unnecessary.
The evidence in the record is insufficient to warrant our rendering a monied judgment against defendant for the alleged occupancy of the property and his cutting timber therefrom.
Accordingly, the judgment is reversed and set aside, and the pleas of prescription are overruled. There is now judgment in favor of plaintiff, Mrs. Ruth Chelette, and against the defendant, Roten Chelette, recognizing her as the owner of an undivided one-half interest in the Southwest Quarter of Northeast Quarter (S.W. 1/4 of N.E. 1/4), Section 8, Township 7 North, Range 3 West, Grant Parish, Louisiana. There is further judgment annulling the tax adjudication to Mrs. E.J. Spikes and her purported sale to the defendant, as to said undivided one-half interest, and ordering the cancellation and erasure from the records of Grant Parish, Louisiana, of the deed evidencing each transfer to that extent. Otherwise, the demands of plaintiff are rejected. All rights to claim reimbursement for taxes and other expenses paid in connection with the mentioned tax sale are reserved to the defendant. The defendant shall pay all costs of both courts.