HOOD, Judge.
This is a petitory action, coupled with other incidental demands, in which plaintiffs *558 seek a judgment decreeing them to be the owners of certain undivided interests in and to the following described tract of land, situated in Catahoula Parish, Louisiana, to wit:
The Northwest Quarter of the Southeast Quarter (NWJ4 of SEJ4); the north three-eighths of the Southwest Quarter of the Southeast Quarter (N Ys of SWJ4 of SE14); and the north five-eighths of the Northeast Quarter of the Southeast Quarter (N^4 of NE 14 of SEJ4); all in Section 21, Township 7 North, Range 6 East of the Louisiana Meridian; containing 80 acres, more or less.
The record shows that by warranty deed dated October 17, 1872, James Benjamin Oliver sold and conveyed to Nelson Newman, who was married to Rebecca M. Newman, a 160-acre tract of land in Catahoula Parish, which included the 80-acre tract which is here in dispute. Nelson Newman died intestate in 1887, and his wife, Rebecca M. Newman, died intestate in 1921. At their deaths they left several children surviving them, some of whom were living at the time the suit was filed, but all of whom are now deceased.
By two separate acts of sale, both executed in 1910, Mrs. Rebecca M. Newman and all of the surviving children of her deceased husband sold two 40-acre tracts of land out of the 160 acres orginally acquired by Nelson Newman, leaving the 80-acre tract which is the subject of this suit.
Plaintiffs are some of the heirs and descendants of Nelson and Rebecca M. New-, man, and as such they contend that they (together with other heirs who were named as defendants) are owners of an undivided Ys interest in and to the above described property. The principal defendant originally named in the suit was Harvey B. McClure, who claimed to have acquired full ownership of the subject property by a warranty deed from Mrs. Mary V. Love and her children to him. Mrs. Love was one of the surviving children of Nelson and Rebecca M. Newman.
After the suit was filed Harvey B. McClure executed a deed purporting to convey this property to his brother, Charles F. McClure, and thereafter the latter was also named as a party defendant. Harvey B. McClure died on December 8, 1960, after this suit was tried, and his widow and children were substituted as parties defendant in his stead. Also, after the suit was filed, other defendants and some of the plaintiffs died, and their surviving heirs were substituted as parties to the suit.
This suit was filed on August 26, 1941. The defendant, Harvey B. McClure, filed the following exceptions: (1) Improper cumulation of causes of action; (2) mis-joinder of parties defendant; (3) no cause and no right of action; (4) estoppel; and (5) a plea of prescription of five years, as provided by Section 11, Article 10, of the Constitution of Louisiana, LSA. The exceptions were tried and judgment was rendered on October 23, 1942, sustaining the exceptions of no right and no cause of action and the plea of estoppel, and dismissing the suit. Plaintiffs appealed from that judgment to the Supreme Court, which court transferred the appeal to the Court of Appeal, Second Circuit (Newman v. McClure, 221 La. 556, 59 So.2d 882). The Second Circuit Court of Appeal reversed the ruling of the trial court and remanded the case for trial on its merits (Newman v. McClure, 62 So.2d 126). Answers were filed, and after a trial of the case on its merits, judgment was rendered on March 24, 1961, in favor of defendants, rejecting plaintiffs’ demands. Plaintiffs have appealed from that judgment.
The transactions relating to this property which are pertinent to the issues presented here are the following:
(1) Tax sale dated June 16, 1900, at which the property was sold to Robert H. Young for unpaid taxes due for the year 1899, under an assessmc. l in the name of Mrs. R. M. Newman.
*559 (2) Tax sale dated June 7, 1915, at which the subject property was adjudicated to the State of Louisiana for unpaid taxes due for the year 1914, under an assessment in the name of Mrs. R, Newman. Defendants contend that this adjudication is void because of an inadequate description of the property which it purports to convey.
(3) Tax sale dated July 14, 1923, at which the subject property was sold to C. F. Farrar for unpaid taxes due for the year 1922, under an assessment in the name of Mrs. R. M. Newman.
(4) Warranty deed dated August 7, 1924, from C. F. Farrar to Mary V. Love, the recited consideration being $64.86.
(5) Tax sale dated July 11, 1925, at which the subject property was sold to Ernest Young, Sr., for unpaid taxes due for the year 1924, under an assessment in the name of Mrs. Mary Love.
(6) Quitclaim deed dated February 18, 1926, from Robert Young to “Mrs. R. M. Newman, and to her heirs, assigns and successors in title.”
(7) Quitclaim deed dated July 29, 1926, from Ernest Young, Sr., to Mrs. Mary Love, the recited consideration being $28.
(8) Tax sale dated July 2, 1927, at which the subject property was sold to S. R. Yancey and J. C. Hardin for unpaid taxes due for the year 1926, under an assessment in the name of “Mrs. R. N. Newman Estate.”
(9) Quitclaim deed dated July 23, 1927, from S. R. Yancey and J. C. Hardin to Mrs. Mary V. Love, the deed specifically reciting that Mrs. Mary V. Love was the delinquent tax debtor and that she had tendered the necessary amount for redemption. The recited consideration for this quitclaim deed is $44.16.
(10) Warranty deed dated October 21, 1936, from Mrs. Mary V. Love and her children to Harvey B. McClure, the recited consideration being $640.
(11) Warranty deed dated January 24, 1944, from Harvey B. McClure to Charles F. McClure,
(12) Certificate of redemption dated May 12, 1958, executed by the Register of the State Land Office, purporting to redeem property in Catahoula Parish to “Mrs. R. Newman.”
There appears to be no dispute between Harvey B. McClure and his brother as to their .respective rights to the property, so the real issue presented here is whether Harvey B. McClure acquired full ownership of the property from Mrs. Love in 1936. Plaintiffs concede that he acquired an undivided Ys interest in the property from Mrs. Love, but they contend that he acquired no greater interest than that. Plaintiffs’ position is that Mrs. Love became the owner of a Ys interest in the property by inheritance, that she never acquired any greater interest in the property than that, and consequently she was not able to convey any greater interest to McClure.
Defendants contend that after the death of Mrs. Rebecca M. Newman, Mrs. Love acquired all of the interests in the subject property which were formerly owned by her brothers and sisters, and that she then conveyed the whole of that property to McClure. The following transactions are the ones which defendants rely upon as vesting full fee title to the property in Mrs. Love:
(1) Warranty deed from C. F. Farrar dated August 7, 1924;
(2) Quitclaim deed from Ernest Young, Sr., dated July 29, 1926; and
(3) Quitclaim deed from S. R. Yancey and J. C. Hardin dated July 23, 1927.
The vendors in those three deeds to Mrs. Love had previously purchased the property at tax sales, and the only title which any of them had or was able to convey to Mrs. Love was the title which he acquired in that manner. Plaintiffs contend that the 1923 tax sale to Farrar, the 1924 tax *560 sale to Young, and the 1927 tax sale to Yancey and Hardin, were void, that the purchasers at these purported tax sales acquired no interest in the subject property, and accordingly that they were unable to convey any interest in that property to Mrs. Love. It is argued that the property was adjudicated to the State on June 7, 1915, for unpaid taxes due for the preceding year, and that the title remained vested in the State from the date of that tax sale until it was redeemed from the State on May 12, 1958. Plaintiffs contend, therefore, that the 1923, 1924 and 1927 tax sales are null and void, because each of those tax sales occurred during the period of time when title to the property was vested in the State.
Plaintiffs are correct in asserting that where property has been adjudicated to the State and has not been redeemed in the time and manner provided by law, the taxing officers of the State are without authority to assess and sell the property as belonging to the former owner or any other person. Waterman v. Tidewater Associated Oil Co., 213 La. 588, 35 So.2d 225; Neal v. Pitre, 142 La. 737, 77 So. 582; Winn Parish Bank v. White Sulphur Lumber Company, 133 La. 282, 62 So. 907; Guidry v. Sigler, La.App. 1 Cir., 21 So.2d 232; Board of Commissioners for Fifth Louisiana Levee District v. Concordia Land and Timber Company, 141 La. 247, 74 So. 921; Thomas v. Bomer-Blanks Lumber Co., La.App., 1 Cir., 105 So.2d 299; Johnson v. Chapman, La.App., 2 Cir., 179 So. 466, reversed on other grounds 190 La. 1034, 183 So. 285; Heirs of Boagni v. Thornton et al., La.App., 3 Cir., 132 So.2d 494.
The property adjudicated to the State on July 7, 1915, however, is described in the proces verbal of the tax sale as follows: “Mrs. Rebecca Newman 80 acres, Book ‘O’ pg. 169.” The instrument recorded in Book “O,” page 169, is the warranty deed, dated October 17, 1872, from James Benjamin Oliver to Nelson Newman, by which deed Newman acquired a 160-acre tract of land which admittedly includes the 80 acres here in dispute.
Defendants contend that the adjudication to the State in 1915 is invalid because the description contained in that adjudication is so vague, indefinite and uncertain that the property which it purports to adjudicate cannot be located and identified. They further contend that the 1915 tax adjudication is void, particularly as to defendant Harvey B. McClure (and his heirs or assigns), because McClure was a third person who purchased the property on the faith of the public records, and the description in the tax deed was not sufficiently specific to give him notice of the fact that this particular property had been previously adjudicated to the State.
We are aware of the provisions of LSA-R.S. 47:2181, and of the numerous authorities holding that a tax debtor or his heirs will not be permitted to set aside a tax sale on the ground that the description is insufficient, unless the description in the tax deed is so defective that it does not furnish the means of reasonable identification. Counsel for plaintiffs have referred us particularly to the cases of Landry v. McWilliams, 135 La. 655, 65 So. 875, and White v. Lockhart, La.App. 1 Cir., 129 So.2d 917, as authority for that rule. We think, however, that this rule cannot be applied to defeat the title of a third person, purchasing on the faith of the public records, if the description in the tax deed is so vague, indefinite and uncertain that the property cannot be located and identified from an examination of the deed itself or from some map, plat or instrument which is referred to in the deed as a part of the description. Quatre Parish Co. v. Beauregard Parish School Board et al., 220 La. 592, 57 So.2d 197; Hargrove v. Hodge, 2 Cir., 9 La.App. 434, 121 So. 224 (certiorari denied); Daigle v. Calcasieu National Bank in Lake Charles, 200 La. 1006, 9 So.2d 394; Smith v. Taylor, 226 La. 235, 75 So.2d 850; Cupples v. Harris, 202 La. *561 336, 11 So.2d 609; Fluker Farms v. James, La.App. 1 Cir., 79 So.2d 166.
In Landry v. McWilliams and White v. Lockhart, supra, both of which are relied on by plaintiffs, the Court held that the tax sales there involved were valid, even though the property was incorrectly described by reciting the wrong township or range. In each of those cases, however, the heirs of the tax debtor were seeking to annul the tax sale, and no issue was presented as to whether such an error may have affected the rights of a third person purchasing on the faith of the public records. In White v. Lockhart [129 So.2d 921], in fact, the court specifically recognized that:
“These appellants are not innocent third persons purchasing on the faith of the public records but are tax debtors and they make no pretense that they were misled as a result of a typographical or clerical error which designated the range as three instead of range two.”
In the instant suit, unlike either of the two cases above mentioned, the party who is seeking to avoid the 1915 tax sale is a third person who purchased on the faith of the public records. The question presented is whether the description contained in that tax sale was sufficient to give McClure notice that the 80-acre tract which he purchased from Mrs. Love in 1936 had previously been adjudicated to the State.
In Hargrove v. Hodge, supra [9 La.App. 434, 121 So. 224], the deed under which defendant claimed, called for “one hundred feet off the West end of triangular lot No. Nineteen (19) * * Because of the irregular shape of Lot 19, it could not be determined with certainty where the line should be drawn separating the property conveyed from the remainder of that lot. In holding that the description was so vague, indefinite and uncertain that it could not serve as notice to third persons purchasing on the faith of the public records, the Court said:
“The purpose of registry is that third persons may have notice of the transfer, and, if the description in the deed is so vague, indefinite, and uncertain that the property cannot be located and identified, the sale is void as to third persons who deal upon the faith of the public records. * * *
“The description in a deed must be such that the property intended to be conveyed can be located and identified and the general rule is that the description must fully appear within the four corners of the instrument itself, or that the deed should refer to some map, plat, or deed as a part of the description, so that the same may be clear.”
In Quatre Parish Company v. Beauregard Parish School Board, supra, the Supreme Court held that an erroneous range number in the description of the property purportedly conveyed by a tax deed rendered the description so vague, indefinite and uncertain that it failed to put the plaintiff, a third party purchaser, on notice of defendant’s claim to the property. The Court indicated that as between the tax debtor and the purchaser at the tax sale, the erroneous designation of the range would not have deprived the latter of title, since the property could have been identified by extrinsic evidence. It held, however, that since plaintiffs and their authors in title “were third persons purchasing on the faith of the public records, they were not put on notice by the registration of the tax deed and are not bound thereby as that deed does not describe the property which they subsequently acquired.” [220 La. 592, 57 So.2d 19.]
In Simar v. LeDoux, 171 La. 729, 132 So. 125, it was held that a sale of 60 acres of land, situated in the north half of the northwest quarter of a given section, in a given township and range, was too indefinite to serve as a warning to third persons.
*562 In Daigle v. Calcasieu National Bank in Lake Charles, supra [200 La. 1006, 9 So.2d 395], the Court said:
“It seems to be settled now by the jurisprudence in Louisiana that such a vague and indefinite description, in an instrument purporting to convey title to real estate, as all of the land owned by the seller in a named parish, is not sufficiently specific to give notice to third parties thereafter dealing with the seller.”
Also, the Supreme Court, in Smith v. Taylor, supra, held that a deed designating the wrong section was too vague to serve as notice to a third party purchaser, even though the purchaser apparently had actual knowledge of the error.
In the instant suit, it appears to us that the 80-acre tract which the 1915 tax deed purports to adjudicate to the State cannot be identified or located from the description contained in the tax deed or from the document to which reference is made in that tax deed. Although it might be inferred that the 80 acres sought to be adjudicated was a part of the 160-acre tract described in the deed recorded in Book “O,” page 169, even with such an inference it would be impossible to locate or identify with certainty the 80 acres which were sold.
Plaintiffs argue that the 80-acre tract adjudicated to the State can be located by referring to the two acts of sale which were executed by Mrs. Rebecca M. Newman and her children in 1910. They argue that by eliminating from the original 160 acres the two 40-acre tracts conveyed by those deeds, there remains 80 acres which must be the tract adjudicated to the State in 1915. We think this argument is without merit, because in order for the tax deed to be effective as to third persons the description must fully appear within the four corners of the instrument itself, or by reference to some map, plat o,r deed which has been made a part of the description. A third party, who purchases property on the faith of the public records, is not required to resort to extrinsic evidence, or to search the records for other documents not referred to in the deed itself, in order to determine whether property with which he is dealing has been previously sold.
We conclude that the description in the 1915 tax deed was so vague, indefinite and uncertain that the property intended to be sold could not be located or identified, and accordingly that title to the property here in dispute did not become vested in the State by virtue of the tax sale. Since title did not become vested in the State, therefore, the subsequent tax sales were valid.
Plaintiffs contend, alternatively, that the 1923 tax sale to Farrar, and the 1925 tax sale to Young, are void, because in each of those sales the property was incorrectly assessed to a person other than the owner. The record shows that by tax deed dated June 16, 1900, the property was sold to Robert H. Young, and that it was not redeemed from him until February 18, 1926. The validity of the 1900 tax sale is not questioned, so we assume that title to this property was vested in Robert H. Young from 1900 to 1926. The 1923 tax sale was made under an assessment in the name of Mrs. R. M. Newman, and the 1925 tax sale was made under an assessment to Mrs. Mary Love. Counsel for plaintiffs contends that both of those tax sales are invalid, because the property was not assessed to the owner.
Article 10, Section 11, of the Louisiana Constitution provides that, “No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes for which the property was sold prior to the date of the sale, unless the proceeding to annul is instituted * * * within five years from the date of the rec-ordation of the tax deed, if no notice is given.” In this case the record shows that the tax deed to Farrar was recorded on May 1, 1924, and the tax deed to Ernest *563 Young, Sr., was recorded on July, 16, 1925. This suit was not filed until 1941, so it is apparent that the suit was not instituted within five years from the date of the recordation of either of these tax deeds.
The jurisprudence of this State has been established to the effect that for the purpose of the prescription or peremption provided by Article 10, Section 11, of the Constitution, it is immaterial whether the assessment was made in the name of the true owner, or in the name of another, or in no name at all. Griffing et al. v. Taft, 151 La. 442, 91 So. 832; Tillery v. Fuller et al., 190 La. 586, 182 So. 683; and Yuges Realty v. Jefferson Parish Developers, 205 La. 1033, 18 So.2d 607. In our opinion, the five-year peremption period provided by Article 10, Section 11, of the Constitution is applicable here, and plaintiffs accordingly are barred from attacking the validity of the 1923 and the 1925 tax sales. Stevens v. Johnson, La.App. 2 Cir., 81 So.2d 464, remanded on other grounds 230 La. 101, 87 So.2d 743; Harris v. Natalbany Lumber Co., 119 La. 978, 44 So. 806; Vestal v. Producers’ Oil Co., 135 La. 984, 66 So. 334; Cooper v. Edwards, 152 La. 23, 92 So. 721; Ramsey v. Frost-Johnson Lumber Co., 168 La. 657, 123 So. 114; Harrell v. Harrell, 174 La. 957, 142 So. 138.
Plaintiffs contend further that the 1923 deed from Farrar, the 1926 deed from Young and the 1927 deed from Yancey and Hardin, all to Mrs. Love, had the legal effect of tax redemptions, and that these conveyances re-invested plaintiffs with title as co-owners with Mrs. Love. In support of that argument, they rely on the decision rendered by the Court of Appeal, Second Circuit, remanding this case to the district court for trial (62 So.2d 126), their contention being that the Second Circuit Court specifically held that the above mentioned deeds to Mrs. Love had the effect of reinvesting the title as it was before the tax sales were made. The following is the language which was used by that court:
“We find no difficulty in reaching the conclusion that all of the deeds by tax purchasers to Mary V. Love were in fact redemptions of the property from the tax sales, and had the effect of reinvesting the title as it was before the tax sales were made. This conclusion makes it unnecessary to decide whether the tax sales were valid. This being true, the co-owners of the property had the right in a reasonable time, while the record title stood in the name of Mary V. Love, to pay their proportionate part of the taxes and have it placed back in their names, Bossier v. Herwig, 112 La. 539, 36 So. 557, and many other cases to the same effect. These co-owners, however, ran the risk that Mary V. Love might sell the property to an innocent purchaser. Mary V. Love did sell the property to McClure on October 21, 1936, and this suit was filed August 26, 1941.” (Emphasis added.) Newman v. McClure, La.App., 62 So.2d 126, 128.
In concluding that the case should be remanded, the Court further said:
“We do not know whether or not plaintiffs can prove anything in regard to the payment of the taxes,, or anything to show that McClure had knowledge of any equities between Mrs. Love and the other Newman heirs, but we believe they have the right to try to prove these things to show, if they can, that McClure was not an innocent third party.
“We do not believe the record as made up at this time, warrants sustaining the plea of estoppel and the exception of no right of action, and that plaintiffs ought to be allowed to try the case on the merits.” 62 So.2d 126, 128.
The Court in that case did state that the deeds by tax purchasers to Mrs. Love “had the effect of reinvesting the title as it was before the tax sales were made.” It obviously meant, however, that these deeds had that effect only as between Mrs. Love *564 and her co-owners. Other language used in the same opinion convinces us that the Court did not hold, or intend to hold, that these deeds to Mrs. Love had the effect of re-investing title in her former co-owners (who were not named as vendees in any of the deeds), with the result that the rights so acquired by the co-owners would be effective against innocent third persons purchasing the property on the faith of the public records. The court specifically recognized, for instance, that by virtue of those three deeds from tax purchasers, “the record title stood in the name of Mary V. Love,” that Mrs. Love’s co-owners had the right within a reasonable time to pay their proportionate part of the taxes and have title to the property “placed back in their names,” but that the co-owners ran the risk of losing their rights upon the sale of the property by Mrs. Love to an innocent purchaser. The Court apparently felt that McClure could not shield himself against attack by pleading reliance on the public records, if he in fact had knowledge of any equities between 'Mrs. Love and the other Newman heirs, so for that reason the case was remanded to the district court to permit plaintiffs to prove, if they could, that McClure was not an innocent third purchaser. There seems to be no question but that the Second Circuit Court felt that if plaintiffs failed to establish that fact, then McClure would be considered as having acquired a valid title from Mrs. Love.
We are not willing to hold at this time that in the absence of fraud or collusion the title acquired by McClure, a third party purchasing on the faith of the public records, could be affected by the circumstance that he may have had actual knowledge of facts not appearing on the public records as to any equities which may have existed between Mrs. Love and the other Newman heirs. See McDuffie v. Walker, 125 La. 152, 51 So. 100; Coyle v. Allen, 168 La. 504, 122 So. 596; Westwego Canal & Terminal Co., Inc. v. Pizanie, 174 La. 1068, 142 So. 691; and State ex rel. Hebert v. Recorder of Mortgages, 175 La. 94, 143 So. 15. We do not think it is necessary to consider that issue here, however, because we are convinced for reasons which will be shown that he did not have knowledge of any such equities, so in any event plaintiffs would not be entitled to the relief which they now seek.
The effect of a co-owner's purchase at a tax sale was correctly stated, we think, in the recent case of White v. Lockhart, supra, 129 So.2d 917, as follows:
“ * * * even a co-owner who purchases at a tax sale acquires the legal title to the adjudicated property and the right of his co-owner to be reinvested with legal title is not a statutory or constitutional right but rests exclusively upon equitable considerations. Thus, where a co-owner buys property at a tax sale and lives on the property, the other co-owners lose their right to have their title restored by paying their proportionate share of the taxes to the purchasing co-owner whenever the rights of third parties have intervened, Hodgeson v. McDaniel, 233 La. 180, 96 So.2d 481. A third party purchasing immovable property need look only to the public records and if such records do nod show the recordation of any adverse claim sufficient to put such third party on notice he obtains a good title notwithstanding that he had personal knozvledge of defects therein.” 129 So. 2d 917, 921. (Emphasis added.)
In Hodgeson v. McDaniel, 233 La. 180, 96 So,2d 481, 483, the Supreme Court said:
“It is the established jurisprudence that property sold to one coowner or coheir for delinquent taxes is regarded,, so far as his coowners are concerned, as merely a payment of the taxes for all and any one or more of them may be reinvested with title by making claim on the tax purchasing coowner within a reasonable time and paying his proportionate share of the adjudication and subsequent installments. Harris v. Natalbany Lumber Co., 119 La. 978, *565 44 So. 806; Vestal v. Producer’s Oil Co., 135 La. 984, 66 So. 334; Cooper v. Edwards, 152 La. 23, 92 So. 721; Doiron v. Lock, Moore & Co., 165 La. 57, 115 So. 366; Skannal v. Hespeth, 196 La. 87, 198 So. 661 and Keller v. Haas, 209 La. 343, 24 So.2d 610. However,, it is important to note, as a careful examination of the above cited cases will reveal, that a cooimer who purchases at a tax sale acquires the legal title to the adjudicated property and that the right of his coowner to be reinvested with legal title is not a statutory or constitutional right but, rather, rests exclusively upon equitable considerations. See Cooper v. Edwards, supra; Harrell v. Harrell, 174 La. 957, 142 So. 138 and other cases above cited. Principles of equity are thus invoked to protect such coowners by not permitting the tax purchasing coowner to profit at their expense provided, of course, that they act with diligence.
“The jurisprudence on the subject discloses that there are two situations in which a coowner may lose his equitable right to have his legal title restored by paying to the tax purchasing coowner his proportionate share of the adjudicated price together with all taxes which have subsequently become due. Those instances are (1), when the co-owner has not come forward to regain his rights within a time considered reasonable under all circumstances presented in the particular case, he is held to be estopped by his laches from asserting his claim and (2), whenever the rights of third parties have intervened.” 96 So.2d 481, 483. (Emphasis added.)
The jurisprudence, we think,, establishes that when property is purchased at & tax sale by one who owns an undivided interest in that property, his co-owners have an equitable right to pay their proportionate share of the taxes and to be reinvested with title, but that they may lose that right to claim the redemptive effects of such a purchase if they fail to assert their claim within a reasonable time or if the rights of a third party purchaser have intervened. See also Washington v. Filer, 127 La. 862, 54 So. 128; Bossier v. Herwig, 112 La. 539, 36 So. 557; Atlantic Refining Co. v. Golson, La.App. 2 Cir., 127 So.2d 341 (certiorari denied); and cases cited in Hodgeson v. McDaniel, supra.
In this case, of course, Mrs. Love was not the purchaser at any of the tax sales here being considered. Farrar, who was not a co-owner with any of the plaintiffs, was the purchaser at the 1923 tax sale, and Mrs. Love acquired the property from him after the period of redemption had expired. Because of this difference in facts there is some question as to whether the rule followed in White v. Lockhard and Hodgeson v. McDaniel,, supra, is applicable here. See Holloway v. Holloway, 221 La. 875, 60 So.2d 468; and Jones v. Jones, 240 La. 174, 121 So.2d 734. Assuming, however, that the rule followed in the White and Hodgeson cases does apply here, and that plaintiffs accordingly had an equitable right to pay their proportionate part of the taxes and to be re-invested with title after Mrs. Love acquired it from Farrar (all of which is an assumption most favorable to plaintiffs), we are convinced that plaintiffs are now estopped by laches from asserting those equitable rights.
The record in the instant suit shows that twelve years elapsed between the time Mrs. Love acquired the property from Farrar, in 1924, and the time she sold it to McClure, in 1936. McClure, before completing the purchase, employed a reputable attorney to examine the title, and he was advised by this attorney that Mrs. Love could convey a good and merchantable title. Immediately after the sale McClure took possession of the property, made a number of improvements on it, and he, or his assigns, have maintained possession of the property continuously since that time. This suit was not filed until 1941, or about 17 years after Mrs. Love acquired the property from Farrar, *566 and a little less than five years after she sold it to McClure.
There is some evidence tending to show that prior to the time McClure acquired the property, plaintiffs or their ancestors in title paid or offered to pay their proportionate part of the taxes to Mrs. Love. This evidence, however, consists largely of hearsay testimony and is extremely vague as to whether any such payments were made. In our opinion, the evidence fails to establish that plaintiffs, or anyone in their behalf, ever paid to Mrs. Love their proportionate part of the taxes, or their proportionate part of the amount which she paid to Farrar for the property.
The fact that plaintiffs delayed 17 years after Mrs. Love became vested with record title to the property, and almost five years after the rights of an innocent third party purchaser intervened, before they instituted this suit, in our opinion constitutes laches and estops them from now asserting the equitable right which they may have had at one time to be re-invested with title.
Counsel for plaintiffs further argue that McClure was in “legal bad faith” at the time he purchased the property, because he employed an attorney to examine the title and thus he is charged with knowledge of all documents appearing of record which make up the chain of title to such property. The record shows that an affidavit was filed in 1926, which sets out the dates of death of Nelson and Rebecca M. Newman and the names of their surviving children, one of whom was listed as Mrs. Love. It is argued that this affidavit, together with the transactions which have been described, are “sufficient to make any title examiner wary of the validity of a deed from Mrs. Love.” The case of Holley v. Lockett, La.App. 2 Cir., 126 So.2d 814, is cited to support that argument, in which case the Court held that if a title examination is made prior to the sale, and it reveals a defect in the title, the purchaser is bound by what the record reveals and he cannot thereafter claim to be in good faith. We find no fault with the holding in that case, but we do not think it is applicable here, because the records, including the 1926 affidavit, did not disclose that plaintiffs had or may have had any equitable rights in and to this property at the time of the sale from Mrs. Love to McClure. According to the records, therefore, there was no defect in the title.
In Ewald v. Hodges, 239 La. 883, 120 So.2d 465, 474, the adjudicatee at a tax sale was the liquidator of the tax debtor corporation. Plaintiffs contended that defendants, whose authors in title were third party purchasers, could not invoke the doctrine of registry because of the fact that prior to the sale there was recorded in the public records a resolution of the tax debtor corporation appointing the adjudicatee as liquidator, and thus the purchasers had knowledge of this fiduciary relationship-which existed between, him and the tax. debtor. The Supreme Court held that this, resolution was not sufficient to put third persons on notice of any equitable claims which-the tax debtor corporation may have had' in the property, and accordingly that the defendants were protected by the public records doctrine. In so holding, the Court said t
“* * * if the tax sale is allowed to remain unchallenged in the conveyance records, and it passes into the hands of another then the equitable-rights of the co-owners come into conflict with the legal rights of the purchaser. And, where there is nothing-in the record to reveal this latent equitable right, it has been uniformly held' that he who purchases from the records has the superior title. * * * ”
In the instant suit, we think the-affidavit filed in 1926 was not sufficient to-notify a subsequent purchaser of the property that plaintiffs were asserting any claim-of ownership to it. We find no merit, therefore, to the argument that McClure was in-legal bad faith in purchasing the property-from Mrs. Love.
*567 Counsel for plaintiffs argue further that a plea of estoppel was never filed in behalf of defendant Charles F. McClure, and accordingly it cannot be considered insofar as that defendant is concerned. We think counsel is in error in this respect, because in the joint answer to one of plaintiffs’ amended petitions, the defendants Harvey B. McClure and Charles F. McClure, recited :
“Further Answering, respondents hereby adopt and reiterate all of the allegations contained in their original answer heretofore filed, * * * ”
and, in Article 34 of the original answer it was alleged:
“And now, further answering respondent avers that plaintiffs are, and should be estopped to urge, maintain or prosecute this action for the reasons set forth in the plea of estoppel heretofore filed, and the facts contained in said plea, and the law applicable thereto are urged and set up in bar to plaintiffs’ rights, just as though they were copied herein in extenso.”
Since we have concluded that Mrs. Love became vested with record title to this property by virtue of the warranty deed from Farrar to her, executed in 1924, and that plaintiffs have lost whatever equitable right ■they may have had to be re-invested with title, it is not necessary for us to consider whether Mrs. Love acquired any additional rights under the 1926 deed from Ernest Young, Sr., or the 1927 deed from Yancey and Hardin.
For the reasons herein set out, we are convinced that the judgment of the trial court is correct, and accordingly that judgment is affirmed. All costs of this appeal are assessed to plaintiffs-appellants.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.