156 So.2d 127 (1963)
Adolis B. FITCH et al., Plaintiffs-Appellees,
v.
Edmond BROUSSARD, Defendant-Appellant.
No. 897.
Court of Appeal of Louisiana, Third Circuit.
September 11, 1963.
*128 Eugene D. Broussard, New Iberia, for defendant-appellant.
Armentor & Resweber, by A. J. Resweber, New Iberia, for plaintiff-appellee.
Newton T. Pharr, New Iberia, S. Gerald Simon, New Iberia, tutor ad hoc and curator ad hoc.
Landry, Watkins, Cousin & Bonin, New Iberia, for U. S. Gas Pipeline Co.
Joseph D. Broussard, New Iberia, in pro. per.
Before TATE, HOOD, and CULPEPPER, JJ.
TATE, Judge.
This is a suit to annul a 1937 tax sale.
The trial court held that the defendant tax sale purchaser was merely a party interposed for a coheir, whose purchase at tax sale is to be regarded as having been in the interest of all of the coheirs rather than of such coheir alone. The defendant purchaser appeals from the consequent judgment in favor of all of the heirs of Camille Broussard, which judgment annulled the tax deed and recognized these heirs as owners in indivision of the 80-acre tract in question.
The parties to this suit are descendants of Camille Broussard, who died in 1897. Following his death, the property was assessed to the "Estate of Camille Broussard." The taxes were regularly paid by the widow or the oldest son (Clovis) of the decedent until both died in 1931. Following their death, the 1932 taxes were not paid, and the property was sold at tax sale in 1933. It was redeemed in 1936 by Adonis Broussard (hereinafter, "Adonis"), one of the other children of the marriage.
After this redemption, the property was again assessed to the "Estate of Camille Broussard." The tax notice for the 1936 taxes which then became due, was sent to the "Estate of Camille Broussard c/o Adonis Broussard."
*129 Adonis did not, however, pay these 1936 taxes when they became due. Instead, he permitted the property to be advertised for sale for non-payment of the 1936 taxes.
In due course, as a result, the property was purchased at tax sale on July 10, 1937, duly recorded, by Edmond Broussard (hereinafter, "Edmond"), who was a son of Adonis and who was living with him at the time. Edmond thereafter paid the taxes on the land and exercised certain acts of possession of it.
The present suit to annul the 1937 tax sale was filed in 1954. The successful litigants, plaintiffs and nominal defendants, are all of the legal heirs of Camille Broussard. Edmond, the defendant-appellant, who was the purchaser at the tax sale, was not a coheir at the time of his acquisition in 1937, since his father Adonis was still alive. (Adonis was originally made a party defendant. However, he died in 1957 after his depositions were taken, and his three childrenincluding Edmondwere substituted as parties in his place. The other two children are appellees, having an interest adverse to Edmond, who claims the entire title to the property, purchased by him at tax sale in 1937.)
The plaintiffs seek the annulment of the tax sale upon their allegation that the 1937 purchase at tax sale by Edmond was in reality a fraudulent attempt by Adonis (through Edmond as a party interposed) to secure the title in himself of the property owned in indivision by himself and his co-heirs. Thus the plaintiffs-appellees rely upon the principle summarized in Hodgeson v. McDaniel, 233 La. 180, 96 So.2d 481, 483, with extensive citation of authority, "that property sold to one coowner or co-heir for delinquent taxes is regarded, so far as his coowners are concerned, as merely a payment of the taxes for all and any one or more of them may be reinvested with title by making claim on the tax purchasing coowner within a reasonable time and paying his proportionate share of the adjudication and subsequent installments." See also Newman v. McClure, La.App. 3 Cir., 134 So.2d 556, certiorari denied.
The defendant Edmond, on the other hand, basically relies upon the pleaded constitutional peremption of five years provided by Article 10, Section 11, of the Louisiana Constitution, LSA, and the jurisprudence thereunder, which prevents the annulment of tax sales, with certain exceptions, unless an action is brought for this purpose within five years from the date of the recordation of the tax deed. See King v. Moresi, 223 La. 54, 64 So.2d 841; Staring v. Grace, La.App. 1 Cir., 97 So.2d 669, certiorari denied, and decisions cited therein.
In holding that the 1937 tax purchase by Edmond should be regarded in reality as a purchase by Adonis of the estate property to the fraudulent prejudice of Adonis's coheirs, our learned trial brother reasoned:
"Adonis Broussard testified that he redeemed the land [in 1936] so as not to lose his share or interest therein. To do this he had to borrow a sufficient sum of money to pay the taxes for three years on the whole property, yet he decided not to pay the taxes levied for the year, 1936, thereby allowing the land to be sold for taxes, including his own interest therein. The fact that he let the property be sold for the taxes of the year, 1936, to his son, Edmond Broussard, instead of seeking reimbursement from his co-heirs of their share of the cost of the redemption and of the taxes levied for the year, 1936, in itself, refutes his contention that he and his son did not conspire to deprive his co-heirs of their share of the property and refutes the contention of Edmond Broussard that he acted in good faith.
"It is evident that Edmond Broussard was interposed by Adonis Broussard in the tax sale that took place in the year, 1937. At the time the property was sold to Edmond Broussard, he was living and working daily with his father, yet they both denied ever having discussed the events leading up to the sale to Edmond Broussard, *130 although Edmond Broussard admitted that he knew that his father had had to borrow the money necessary to effect the redemption of the property from the tax sale to Jules J. Olivier. Moreover, as brought out in the testimony of the defendant, Edmond Broussard, he had not before and has not since bought other property at tax sale. He was unfamiliar with the property in question which was assessed in the name of his grandfather's estate."
In our opinion, the above facts do not support the conclusion that Edmond's purchase at tax sale in 1937 was in reality a purchase by him on behalf of his father, Adonis, so as to bring into application the doctrine relied upon by the plaintiffs to the effect that the purchase by such coheir (Adonis) is regarded as merely a payment of the taxes by him on behalf of all the coheirs.
The facts at most indicate that Adonis knowingly failed to pay the taxes when due and that he stood by without protest when his son, Edmond, himself purchased the property at tax sale and thus acquired an interest adverse to that of the coheir-owners (including Adonis). There is not the slightest evidence that such action by Edmond was done in the interest of Adonis, and indeed Edmond's present claim is adverse to that of Adonis's other children. So far as the evidence shows, Edmond alone furnished the consideration for the 1937 tax deed, paid the taxes thereafter, received the consideration for a pipeline right of way and a mineral lease, and exercised certain other acts of ownership, all in Adonis's lifetime.
In the absence of some fiduciary relationship or express or implied agreement, we are unable to see that a coheir violates any duty to the other co-owners by failing to pay the taxes on property owned in indivision. The mere fact that Adonis, without consulting his coheirs, redeemed the estate property from the earlier 1933 tax sale did not, in our opinion, create in him a duty to continue to pay the future taxes as they became due, just as none of Adonis's coheirs were subject to such a duty. The coheirs who testified, frankly admitted that Adonis had never entered into any agreement with them to pay the taxes when due, nor in fact had Adonis ever paid any taxes when due any year.
In our opinion, the circumstance that, following his redemption of the estate property, Adonis did not see fit to continue to pay the taxes, could not prevent the acquisition of it at tax sale by one who was not a coheirwhether such tax sale purchaser was a complete stranger to the family or whether it was as now the son of a coheir, in the absence of evidence (and there is none) that in fact such tax sale purchaser was in realty an interposed party fraudulently conspiring with a coheir to purchase the property for such coheir.
To some extent, the trial court reached its conclusion in reliance upon the statement in Chelette v. Chelette, La.App. 2 Cir., 5 So.2d 553, that the burden of proof shifts to the defendant to prove the genuineness of the transfer when the plaintiff supports allegations of fraud or simulation with "evidence sufficient to cast serious doubt on the reality of the transaction". 5 So.2d 554. For the reasons noted, the evidence is not sufficient so as to cast serious doubt upon the validity of the tax acquisition by Edmond and so as to bring into application this principle.
It is further to be remembered that "`one who alleges fraud has the burden of establishing it by legal and convincing evidence since fraud is never presumed, and that to establish the fraud exceptionally strong proof must be adduced * * *. It has also been said that evidence showing that the fraud was probable or that the circumstances partook of a suspicious character is not sufficient, and that the fraud must be established by proof stronger than the mere preponderance of the evidence * * *'". Todt v. Todt, 237 La. 168, 110 So.2d 566, 570-571.
*131 So far as the coheir-owners of the property were concerned, then, at the time of the tax sale in 1937 Edmond was neither a coheir nor under any duty to them which prevented him from acquiring the property at such tax sale. The present situation is thus to be distinguished from instances where the tax sale purchaser was held to have owed some duty to the true owners of the property to pay the taxes on the property, so that his failing to do so and instead purchasing the property for himself at tax sale was held to have amounted to a legal fraud which prevented the accrual of the constitutional peremption in his favor. See, e.g.: Wall v. Hamner, 182 La. 1049, 162 So. 769 (agent-principal); Babin's Heirs v. Daspit, 120 La. 755, 45 So. 597 (father-child); Alexander v. Light, 112 La. 925, 36 So. 806 (administratrix); Robertson v. Grigsby, La.App. 1 Cir., 41 So.2d 860 (tax purchaser misled his co-owners). Such decisions, relied upon by able counsel for the appellees, are therefore inapplicable.
The present situation is also to be distinguished from that in Ensminger v. Vampran, La.App. 1 Cir., 15 So.2d 161, Chelette v. Chelette, La.App. 2 Cir., 5 So.2d 553, and Williams v. Watts, La.App. 2 Cir., 195 So. 54, cited to us by the appellees. In those instances, an interposed party bought the estate property at tax sale and thereafter "sold" it to a coheir (or in Ensminger, to a spouse in community with the coheir), in whose name title to the property stood at the time of the suit. From the fact that the coheir had taken title to the property sold at the tax sale, as well as other strong corroborative circumstances, the court in each instance concluded that the evidence supported a determination that the true purchaser at the tax sale was the coheir through the party interposed.
In the case before us, however, the title to the property was never transferred to the coheir, nor is there the slightest iota of proof that the tax sale purchaser acquired, in reality, for the coheir.
We therefore conclude that the learned trial court was in error in overruling the plea of peremption of five years filed to this 1954 suit by the defendant Edmond Broussard, the purchaser at the 1937 tax sale. As stated in King v. Moresi, 223 La. 54, 64 So.2d 841, 842 (where the Supreme Court held that the five year constitutional peremption cured the defects in the title when a sheriff, who is legislatively prohibited from buying property at tax sale, purchased property through his wife as an interposed party), this constitutional peremption provided by Article 10, Section 11, "applies to all tax sales except those specifically excepted therein and those where the tax debtor remains in corporeal possession of the premises. The language used is very broad. This constitutional provision announces the public policy of this State to set at rest tax titles once and for all." See also Ewald v. Hodges, 239 La. 883, 120 So.2d 465 and Resweber v. Jacob, La.App. 3 Cir., 125 So.2d 241.
For the reasons assigned, the judgment of the trial court annulling the tax sale to Edmond Broussard is reversed, and judgment is rendered herein in favor of Edmond Broussard, the defendant, and against the other parties hereto, recognizing and affirming the validity of the tax sale of July 10, 1937, to him of the following described property:
One certain unimproved tract of land containing eighty (80) acres, and being the North one-half (½) of the Northwest one-fourth (¼) of Section 39, Township 14 South, Range 7 East, located in the 2nd Ward of Iberia Parish, Louisiana.
Being the same land acquired by Edmond Broussard, at Tax Sale, dated July 10, 1937, and duly recorded in Conveyance Book 132, Folio 148, Original Entry No. 53075 of the Public Records of Iberia Parish, Louisiana.
The plaintiffs are assessed with all costs of these proceedings and of this appeal.
Reversed and rendered.