BOLIN, Judge.
In May, 1969, the widow and heirs of Allen Davis and the heirs of Saphronia Davis filed suit against the widow and heirs of Lendon L. Smith seeking to have set aside, as null and void, two private succession sales of 140 acres of land located in Bienville Parish, Louisiana, which sales were conducted in December, 1952. Pleas of five and ten year prescription, under Louisiana Civil Code Articles 3542 and 2221, were filed by Mrs. Smith and two of her children; the prescription of ten and two years, provided in Louisiana Civil Code Article 2221 and Louisiana Revised Statutes 9:5621, were filed by the two remaining defendants. All prescriptive pleas were overruled and trial was held in 1970. On the merits the district court found the plaintiffs had failed to bear the burden of proof required of them to show error in the succession proceedings or to show fraud, and rejected all claims of plaintiffs, who have appealed.
Plaintiffs contend on appeal the succession sales were illegal and were the result of a scheme on the part of defendants’ ancestor to fraudulently obtain the entire *519 140 acres of land from plaintiffs’ ancestors who were the previous owners of the property.
Copies of the court records of the two succession proceedings were introduced into evidence and are principally relied upon by plaintiffs to prove their charge of illegality which, they contend, renders the succession sales radical nullities not subject to ratification. These records show that Allen Davis died intestate on June 8, 1950, at which time the 120-acre tract was his separate property; that the 20-acre tract was owned in indivisión with the heirs of Saphronia Davis with whom Allen Davis was living in community at the time of its acquisition. Saphronia Davis died intestate in 1940, leaving heirs who have joined with the heirs of Allen Davis in bringing this action. At the time of the death of Allen Davis, Lendon L. Smith was the owner and holder of two notes, totalling $1425, secured by mortgages on the 120-acre tract.
In February 1951, Lendon Smith, alleging he was a mortgage creditor of Allen Davis, petitioned to open the Allen Davis succession and to be appointed administrator, which requests were granted by the court. An attorney at law was appointed for unknown and absentee heirs and notice of these proceedings was published in accordance with law. In March 1951, Mr. Smith was also appointed administrator of the Succession of Saphronia Davis; an attorney was appointed for the heirs and notice of all proceedings was published according to law.
An inventory was taken and the property of the Allen Davis succession was appraised at $1,000, being $7.50 per acre for the 120 acres and $10 per acre for an undivided one-half interest in the 20 acres. Alleging approximately $1425, plus eight per cent interest and ten per cent attorney’s fees, was owed on his mortgage, Smith petitioned for a private sale to his brother Wilton Smith of the 120-acre tract and the undivided one-half interest in the 20-acre tract for $1200, or $200 more than the appraisal. In a separate inventory and appraisal the undivided one-half interest in the 20-acre tract belonging to the succession of Saphronia Davis was appraised at $100 and Lendon Smith petitioned the court for a private sale of that interest to Wilton Smith for the appraised value. The private sales were duly authorized by the court and were consummated for a total price of $1300, Wilton Smith being the purchaser.
Approximately three weeks subsequent to the homologation of his accounts and discharge as administrator, Lendon Smith purchased the entire 140 acres from Wilton Smith for a recited consideration of $2000 and continued to possess it as owner until his death in 1967. The final accounting filed in the Allen Davis succession shows the proceeds of that sale were applied to payment of Smith’s mortgages and administration costs. Proceeds of the sale in the Saphronia Davis succession were applied only to costs related to administration of the succession. No other debts were listed or paid. All the recited facts are taken from the face of the records, from stipulations and from the records of the successions which were introduced into evidence.
No rights of third parties are involved in this case as the property is still owned by the widow and heirs of Lendon Smith.
At the time of trial on the pleas of prescription it was stipulated that Leon Davis left the property in September, 1952, and that none of plaintiffs have since that time exercised any character of possession over the property; further, that none of the plaintiffs were minors in the year 1952. There is no evidence that any of the plaintiffs ever paid taxes on the property.
Approximately eighteen years elapsed between the time of opening the two Davis successions and the instant litigation. All parties who were involved in or knew any *520 thing about the proceedings were deceased or incompetent at the time of trial. [Wilton Smith has since died.]
The testimony taken at the trial adds very little to the evidence. Herbert Davis, who acted as attorney in fact for the other heirs, testified as to conversations allegedly had with Mr. Smith in 1950 relative to the amount of the debt, and indicating that only $450 was due at that time. However, since Mr. Smith was dead and no third persons were present during the alleged conversations, they cannot be contradicted. The trial court apparently discounted these statements as self-serving or inadmissible to vary the records introduced in evidence. [See Calhoun v. McKnight Succession (1892), 44 La.Ann. 575, 10 So. 783]
The remaining testimony of both Herbert Davis and his brother, Leon Davis, establishes that the Davis family discussed the matter of the indebtedness and mortgages on the property belonging to their deceased father and that they even took some steps to borrow money to pay the debts. However, since some of the heirs refused to contribute toward this effort it was ceased and no further attempt was made to pay the debts or determine what had happened to the property until the instant suit was filed.
The only other testimony of relevance was that of L. B. Shackelford, a 74-year-old timber estimator who testified he had appraised the land in question for Continental Can in 1952 (at another point he said 1949) at “about” $25 per acre. He admitted that $25 was “about as high as they ever paid along them days” and that prices ranged from $15 to $25 an acre. However, for whatever reason, Continental did not buy the land at that price. When asked how he reached the $25 per acre figure, Shackelford replied he compared it with other property being sold or that had been purchased by Continental. However, he admitted the Davis property was extremely poor, sandy soil, had very little timber on it, and located some miles from his so-called comparables. Although he testified he had copious records of his estimating activities during the critical period, none was offered in evidence. Both defense counsel objected to his testimony as an expert, but he was accepted by the court as a “good country real estate appraiser”. Shackelford admitted that although he was a “timber” man, his superintendent, Harvey Lewis, usually fixed the price on it and would sometimes go and look at the land and timber to check on it.
It is conceded the land has greatly increased in value since 1952, principally due to extensive pine plantings done for or by Lendon Smith. However, we are concerned here only with the legality of the proceedings in 1952.
The first legal issue which caused the trial judge considerable concern was whether the action instituted by plaintiffs approximately eighteen years after their ancestor died had prescribed under Civil Code Articles 3542, 2221, 3543, and Louisiana Revised Statutes 9:5621.
After a thorough research of this issue the judge below concluded that none of these articles applied to a radical, or absolute, nullity and that sufficient allegations had been made in plaintiffs’ petition which, if proved, would render the succession proceedings and subsequent sales absolute nullities.
Since the case went to trial and was decided by the lower court on the issue of the legality of the succession sales, we shall first proceed to a determination of the correctness of the district court judgment.
LEGALITY OF THE ALLEN DAVIS SUCCESSION
One of the main contentions of plaintiffs is that the conveyance of the Allen Davis property by the administrator, Lendon Smith, to his brother was the sale to a person interposed in violation of Louisiana Civil Code Article 1146 (superseded *521 by La.C.C.P. Articles 3194, 3195) which provided at the time:
“Art. 1146. Every curator of a vacant succession or of absent heirs is prohibited from purchasing by himself, or by means of a third person, any property, movable or immovable, entrusted to his administration, under the pain of nullity and responsibility for all damages caused thereby.
“Any executor, administrator, curator of a vacant succession, or tutor, may purchase at the sale of the effects of the deceased, whose estate he may represent, when he is the surviving partner in the community or ordinary partnership, or an heir or legatee of the deceased, or any mortgaged property when he is the mortgage creditor, or any property encumbered with a vendor’s lien when he has a claim secured by such vendor’s lien; * * (Emphasis ours)
Since Lendon Smith was a mortgage creditor of Allen Davis at the time of the latter’s death, there was no prohibition against his appointment as administrator. (La.C.C.P. 3097)
Therefore, under Louisiana Civil Code 1146, then in force, he could have purchased the property at the succession sale. Since there was no prohibition against his purchasing the property, there seems little reason to forbid him from selling to his brother, Wilton Smith, if the property is sold for the appraised value and there is no proof of an effort to deprive the heirs of their property.
An examination of all the proceedings, including the advertising required by statute, the orders signed by the clerk and by the district judge, the account filed, etc., discloses no procedural irregularity. Also, the administrator’s final account in this succession adequately explains the manner in which the final indebtedness was determined.
We consider next the question of whether the evidence supports plaintiffs’ allegations that Lendon L. Smith perpetrated a fraudulent scheme in order to obtain the property for himself.
Louisiana Civil Code Articles 1847 and 1848 are relevant to this question:
“Art. 1847. Fraud, as applied to contracts, is the cause of an error bearing on a material part of the contract, created or continued by artifice, with design to obtain some unjust advantages to the one party, or to cause an inconvenience or loss to the other. From which definition are drawn the following rules:
1. Error is an essential part of the definition; an article [artifice] that can not deceive can have no effect in influencing the consent, and can not injure the validity of the contract.
2. The error must be on a material part of the contract, that is to say, such part as may reasonably be presumed to have influenced the party in making it; but it needs not be the principal cause of the contract, as it must be in the case of simple error without artifice.

“Art. 1848. Fraud, like every other allegation, must be proved by him who alleges it, but it may be proved by simple presumptions or by legal presumptions, as well as by other evidence. The maximum that fraud is not to be presumed, means no more than that it is not to be imputed without legal evidence.”
Plaintiffs contend that, even without the testimony of Herbert and Leon Davis, the documents and other evidence are sufficient to brand the transaction as fraudulent. However, in numerous cases, beginning with Calhoun v. McKnight, supra, from which the trial judge quoted extensively, it has been held that fraud will not be presumed but must be proved by “circumstances must be of a character to convince the mind clearly before they can support a conviction of such an offense, almost akin to crime.” See also Bordelon v. Bordelon (La.App. 3 Cir. 1965) 180 So.2d *522 855; Packwood v. Johnson (La.App. 1 Cir. 1972) 264 So.2d 663; Fitch v. Broussard (La.App. 3 Cir. 1963) 156 So.2d 127, and Todt v. Todt, 237 La. 168, 110 So.2d 566 (1959).
We conclude, as did the trial judge, that the circumstances surrounding this sale might possibly suggest it was the intention of Lendon Smith to obtain title to this property hut that this suggestion alone cannot establish a “fraudulent scheme” as has been alleged. We find plaintiffs have failed to show any illegality or fraudulent scheme was perpetrated by the administrator of the Allen Davis Succession and plaintiffs’ claim to this extent is rejected.
LEGALITY OF THE SUCCESSION OF SAPHRONIA DAVIS
The record establishes that Saphronia Davis, who was the second wife of Allen Davis, ’was living in community with Davis at the time he acquired the 20-acre tract. There were no children of this marriage, however, at her death in 1940 she was survived by children of an earlier marriage. These heirs have joined the Davis heirs as plaintiffs herein. Her succession had not been opened judicially nor had her heirs been recognized and placed in possession of her undivided one-half interest prior to the time Lendon Smith petitioned and was appointed administrator of that succession in 1952.
Since Lendon Smith was not a mortgage creditor of Saphronia Davis nor were there shown to be any other debts which required the appointment of an administrator, we conclude the succession proceeding, including the purchase by Wilton Smith and subsequent sale to Lendon Smith, was null and void as against the heirs of Saphronia Davis. Having concluded the succession proceeding was a radical nullity, the prescriptions provided in the Civil Code articles and statute, cited supra, are inapplicable.
For the reasons assigned defendants, Lottie Bell Smith, Billy Clint Smith, Mary Smith Lawson and Linda Smith Sermons are declared the owners in indivisión of the following described property:
The West Half of the Southeast Quarter and the West Half of the East Half of the Southeast Quarter, Section 10, Township 16 North, Range 7 West, Bienville Parish, Louisiana, containing 120 acres, more or less.
Also an undivided one-half interest in and to the following: East Half of Southeast Quarter of Southeast Quarter, Section 10, Township 16 North, Range 7 West, Bienville Parish, Louisiana, containing 20 acres, more or less (the other one-half interest belonging to the Succession of Saphronia Davis, deceased.)
It is further ordered that the judgment of the lower court affecting that portion of the property belonging to the Succession of Saphronia Davis is reversed, and the sale of that property to Lendon Smith is declared to be null and void, said property being described as follows:
An undivided one-half interest in and to the following: East Half of Southeast Quarter of Southeast Quarter, Section 10, Township 16 North, Range 7 West, Bienville Parish, Louisiana, containing 20 acres, more or less.
It is further ordered that the heirs of Saphronia Davis are declared to be the owners in indivisión of the property described.
All costs of the lower court and of this appeal are assessed equally against appellants and appellees.